## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MARTIN CODY et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1041 (RJL)** |
| | ) | |
| **THE HONORABLE DONALD RUMSFELD** | ) | |
| **Secretary of Defense et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant hereby moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim upon which relief can be granted. Alternatively, Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.

In support of this motion, Defendant respectfully submits the attached memorandum of points and authorities, a statement of material facts not in genuine dispute, and a proposed order.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, DC Bar #171538
Assistant United States Attorney

_____

KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 353-9895

Of Counsel:
Major Patrick Gary
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARTIN CODY, et al,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Case No. 05cv1041 (RJL)** |
| | ) |
| **DONALD RUMSFELD,** | ) |
| **Secretary of Defense, et al,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF**
**CAN BE GRANTED, OR ALTERNATIVELY,  FOR SUMMARY JUDGMENT.**

## I.  INTRODUCTION

Plaintiffs, residents of the Armed Forces Retirement Home - Washington (the "Home"),

bring suit pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq. alleging the

failure of the Defendants to provide residents of the Home high quality, on-site health services as

mandated by 24 U.S.C. § 413.   Plaintiffs ask this Court to order Defendants to restore the health

care services provided at the Home to the level of services previously provided. Defendant

moves to dismiss Plaintiffs' complaint for failure to state a claim for which relief can be granted.

Fed. R. Civ. P. 12(b)(6).  In the alternative, Defendants move for Summary Judgment.  There is

no genuine issue of material fact regarding the level of medical and dental care provided to

residents at the Home.  As such, presuming Plaintiffs' allegations are true, and allowing them all

favorable inferences therefrom, Plaintiffs still cannot prevail.

1

## II.  ARGUMENT

## A.  PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FED. R. CIV. P. 12(b)(6) AS THE AGENCY'S DECISION IS NOT JUSTICIABLE.

1.  Standard of Review

Under Federal  Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the "Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief."  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  The Court must resolve all factual doubts in favor of the Plaintiff and allow the Plaintiff the benefit of all inferences.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

In reviewing a motion to dismiss, the Complaint's factual allegations must be presumed true and all reasonable inferences drawn in Plaintiff's favor.  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  While plaintiff is entitled to all favorable inferences that can be drawn from those allegations, Warth v. Seldin, 422 U.S. 490, 501 (1975), the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Kowal, 16 F.3d at 1276.  Further, while the court must accept plaintiff's allegations of fact as true, the court is not required to accept as correct the conclusions plaintiff would draw from such facts.  Taylor v. Federal Deposit Insurance Corp., 132 F.3d 753, 762 (D.C. Cir. 1997); National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  Nor must a Court "accept legal conclusions cast in the form of factual allegations." Kowal, 16 F.3d at 1276; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).

2.  **Plaintiffs' Claim Should Be Dismissed as Non-Justiciable.**

24 U.S.C. § 413 provides that, "[t]he Retirement Home shall provide for the overall

health care needs of residents in a high quality and cost-effective manner, including on site

primary care, medical care, and a continuum of long-term care services."  24 U.S.C. § 413(b).

Plaintiffs allege that the Defendants violated 24 U.S.C. § 413.  The standard of review is found in

the Administrative Procedure Act (APA).  5 U.S.C. § 701, et. seq.  The standard of review under

the APA, when an agency's action is alleged to violate a statute, requires a determination of

whether the Agency's actions were contrary to a statute.  5 U.S.C. § 706(2)(C).  "When

construing statutes, we show 'great deference to the interpretation given the statute by the

officers or agency charged with its administration.'" Briggs v. Sullivan, 954 F.2d 534, 538 (9th

Cir. 1980) (quoting E.P.A. v. Nat'l Crushed Stone Ass'n, 449 U.S. 64, 83 (1980)).  The standard

is deferential to the Agency, and the Court should not substitute its judgment for that of the

Agency.  Citizens to Preserve Overton Park, Inc., et al v. Volpe, 401 U.S. 402 (1971).  A court

should recognize that because of the expertise of the Agency, the Agency's administrative

decisions should be given deference.  American Medical International, Inc. v. Secretary of

Health, Education, and Welfare, 466 F.Supp. 605 (D.D.C. 1979).  This is especially so when the

statute at issue is ambiguous.  Mineral Policy v. Norton, 292 F.Supp. 2d 30 (D.D.C. 2003).

Under the APA, agency action is not subject to judicial review to the extent that such

action "is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  As the Supreme Court

explained in Heckler v. Chaney, 470 U.S. 821 (1985), and reiterated in Lincoln v. Vigil, 508 U.S.

182 (1993), section 701(a)(2) mandates that "review is not to be had" in those rare circumstances

where there is "no meaningful standard against which to judge the agency's exercise of

discretion." 470 U.S. at 830; 508 U.S. at 190. The Court reasoned that "if no judicially

manageable standards are available for judging how and when an agency should exercise its

discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" Heckler, 470

U.S. at 830.

No Judicially manageable standard exists where the "statutory standard is expressed in

such general concepts that it requires and must contemplate the exercise of discretion in choice

among various rational alternatives none of which can fully satisfy all demands of competing

interests." Congress of Railway Unions v. Hodgson, 326 F. Supp. 68 (D.D.C. 1971). A mere

difference of judgment between a person disadvantageously affected by agency action and the

responsible head of the agency over the merits of particular administrative action as a means of

achieving a legislative objective, when Congress has assigned authority to make and act upon

such determinations to the agency, is not judicially reviewable. *Id.* at 73.

In the present case, the statute at issue is drafted in such a way as to provide no judicially

manageable standards. 24 U.S.C. § 413(b) states: "Medical and dental care. The Retirement

Home shall provide for the overall health care needs of residents in a high quality and cost-

effective manner, including on site primary care, medical care, and a continuum of long-term

care services." Plaintiffs allege that the statute imposes a nondiscretionary duty on Defendants.

While the duty to provide medical care may be non-discretionary, plaintiffs ignore the competing

term, cost effective, which Congress inserted into the statute. "High quality" is often at odds

with "cost-effective." The statute by its terms sets up a "choice among various rational

alternatives none of which can fully satisfy all demands of competing interests." Congress 328 F.

Supp. at 73. This language indicates that Congress intended to commit to the agency's discretion

decisions regarding the medical and dental care provided to the residents of the Home, and to make the difficult decisions necessary in order to continue to provide high quality medical care in a way that also makes sense financially.

The statute mandates that the Home meet the overall health care needs of its residents. 24 U.S.C. § 413(b). The Home must provide on site primary care, medical care, and a continuum of long term care services. Id. Plaintiffs do not allege that the Home has failed to provide these services but take issue with the quality of the services provided. However, the statute provides no basis for determining how best to allocate resources amongst these competing interests. This is not a case of interpreting statutory language, but rather a case of balancing competing goals. This case involves determinations of how to allocate resources without any statutory guidance from Congress and is thus very similar to cases involving allocation of a lump sum appropriation. It is a fundamental principle of appropriations law that where Congress merely appropriates lump-sum amounts without statutory restriction, a clear inference may be drawn that it does not intend to impose legally binding restrictions...as long as the agency allocates the funds to meet permissible statutory objectives, courts may not intrude under 5 U.S.C. § 701(a)(2). Lincoln v. Vigil, 508 U.S. 182 (1993). The Statute cited by plaintiffs, 24 U.S.C. § 413, outlines the purposes for which the Home is required to expend funds and some for which the Home is forbidden from expending funds. Like a lump sum appropriation, the statute "requires a complicated balancing of a number of factors which are peculiarly within agency expertise: whether its resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall

5

policies." <u>Lincoln v. Vigil</u>, 508 U.S. 182 (1993), citing <u>Heckler</u>, 470 U.S. at 831. (Internal quotation marks omitted).

Plaintiff's complaint alleges changes to the health care provided to residents. Congress envisioned that changes would be made in the level and type of health care at the Home.  The Senate Armed Services Committee, in its report on the National Defense Authorization Act for Fiscal Year 2006, directed that the Home's Annual Performance and Accountability Report include a report on the quality and access to health care for residents and any changes to the level and type of care provided.  S. Rep. No. 109-69, at sec. 422 (2005).  Accordingly, Congress anticipated changes to the level and type of health care.  This is consistent with the Agency's interpretation.  The Director of the Home has discretion to make changes that he deems appropriate, provided he notifies Congress in the Home's annual report.  In this way, Congress exercises its oversight of the Home.

Plaintiffs' claims, even if true, of reductions in particular aspects of the health care provided to residents do not establish a diminution of the overall level of care.  As in any case involving the allocation of resources, reductions in one area must be weighed against increases made in other areas.  Further, there is nothing in 24 U.S.C. § 413 which makes the previous level of care a standard the Home must achieve.  Even if plaintiffs could prove a reduction in overall care, they would still fail to state a claim for which relief may be granted.  Because 24 U.S.C. § 413 provides no justiciable standard, the Plaintiffs' claim should be dismissed for failure to state a claim upon which relief can be granted.

**B.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING THE LEVEL OF MEDICAL AND DENTAL CARE PROVIDED TO PLAINTIFFS.**

Even if the Court finds that 24 U.S.C § 413 provides a judicially manageable standard, Defendant is entitled to Summary Judgment because by any standard the changes made by the director of the Home are rational.

1.  **Standard of Review**

In 1986, the Supreme Court issued three opinions that clarified the standards governing consideration of motions for summary judgment under Fed. R. Civ. P. 56.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex at 322; Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson, 477 U.S. 242 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247.  The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case.  Celotex, at 325.  "The burden on the moving party may be discharged by 'showing' –  that is, pointing out to the (Court) –  that there is an absence of evidence to support the non-moving party's case." Id.  Once the moving party has met its burden,

7

the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial. Matsushita, 475 U.S. at 586. Fed. R. Civ. P. 56 requires the party opposing summary judgment go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir. 1986). To avoid summary judgment, the Plaintiff must state specific facts or present some objective evidence that would enable the court to find an entitlement to relief.

In an opinion issued the same day as Celotex, the Supreme Court explained the circumstances where summary judgment is appropriate: "if the evidence is merely colorable . . . or is not sufficiently probative . . . summary judgment may be granted . . . (T)he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown. Fed. R. Civ. P. 56(e) (the nonmoving party may not rest on mere allegations but "must come forward with 'specific facts showing there is a genuine issue for trial."). See also Hayes v. Shalala, 902 F.Supp. 259, 263 (D.D.C. 1995) (opposition to summary judgment must consist of more than mere unsupported allegations or denials); Johnson v. Digital Equip. Corp., 836 F.Supp. 14, 18 (D.D.C. 1993) (evidence that is merely colorable or not sufficiently probative is insufficient to defeat summary judgment); Baton v. Powell, 912 F.Supp. 565, 578 (D.D.C. 1996).

The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

8

material fact.  *See* <u>Anderson</u>, 477 U.S. at 247-248.  Perhaps most significantly, the Court authorized weighing the evidence at the summary judgment stage of litigation, stating that the "purpose of summary judgment is to 'pierce the pleadings, and to assess the proof in order to see whether there is a need for a trial.'" <u>Id</u>.  (citation omitted).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Id</u>. at 249-250 (citations omitted).  If the evidence is "merely colorable, or is not significantly probative," or the record taken as a whole could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." <u>Id.</u>; <u>Matsushita</u>, 475 U.S. at 587.

Thus, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," (<u>Matsushita</u> at 586), or with "conclusory allegations . . . unsubstantiated assertions, . . . or a scintilla of evidence." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Importantly for this case, "[b]y pointing out the absence of evidence to support the nonmoving party's case, the moving party can demonstrate that there is no genuine issue as to any material fact, therefore entitling it to summary judgment." <u>Shelborne v. Runyon</u>, 1997 WL 527352 at **3 (citing <u>Celotex</u>, 477 U.S. at 325).

In <u>Celotex</u>, the Supreme Court further instructed that the "(s)ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex</u>, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).  A court should grant summary judgment if the moving party submits affirmative evidence that negates an essential element of the nonmoving party's claims or by demonstrating to the court that the

nonmoving party's evidence is insufficient to establish an essential element of the nonmoving

party's claim.  Celotex, 477 U.S. at 331.

2.  **Administrative Procedure Act**.

Under the APA, "findings and determinations of the administrative authority [are] final

and conclusive unless they are  unsupported by substantial evidence, or are arbitrary and

capricious or otherwise contrary to law."  Orfanos v. Department of Health and Human Services,

896 F.Supp. 23 (D.D.C. 1995) .  An agency's action may be set aside only if it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §

706(2)(A).  The arbitrary and capricious standard of the APA is a narrow standard of review.

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

In applying the APA standard, the court "must consider whether the decision was based

on a consideration of the relevant factors and whether there was a clear error of judgment."  *Id*.

Because the court's role is to ensure that an agency decision is based on relevant factors and is

not a "clear error of judgment," the court may not substitute its judgment for that of the agency.

*Id*.  If the "agency's reasons and policy choices . . . conform to 'certain minimal standards of

rationality' . . . the [agency decision] is reasonable and must be upheld."  Small Refiner Lead

Phase-Down Task Force v. EPA, 705 F.2d 506, 521, (D.C. Cir. 1983) (citation omitted).

3.  The Agency's Actions were not arbitrary and capricious.

Defendants move for summary judgment on Plaintiffs' claim that Defendants failed to

provide residents of the Home with high quality, on-site health services in a cost effective

manner as mandated by 24 U.S.C. § 413.   The attached declaration from the Director of the

10

Home, Mr. Timothy Cox, establishes conclusively that the Home provides high quality health

services to its residents. (Defendants' Exhibit a; Hereinafter Def Exh A) As Mr. Cox states:

> The the Home continues to provide quality medical and dental services to its
> residents.  Medical and dental services and benefits have not been eliminated or
> reduced.  However, following the guidance provided in [24 U.S.C. § 413], the
> Agency has, in certain instances, a more cost effective service delivery model to
> provide residents quality medical and dental care.

DEX 1 ¶ 6.

In his declaration, the Director explains the competing interests involved in maintaining

the high quality of health care, while also meeting the Congressional intent of doing so in a cost

effective manner.[1]  See, Def Exh A.   Prior to Mr. Cox' appointment as Director of the Home, the

Home had experienced an extended period of declining revenues and increasing operating costs.

Def. Exh. A, ¶ 5.  Mr. Cox led an effort to streamline the operation of the Home to meet its dual

purpose of providing high quality health care in an efficient and cost effective manner.  In many

ways, the changes that Mr. Cox implemented increased the quality of care.  For example,

residents are seen by a physician rather than a physician's assistant.  Def. Exh. A, ¶ 6.  Residents

have access to a new state of the art dental facility that allows for dental x-rays to be taken and

read on site.  Def. Exh. A, ¶ 6.  Also, despite Plaintiffs' claims, the Home provides transportation

for medical visits outside the Home and pharmaceuticals.  Def. Exh. A, ¶ 6.

To the extent that changes in health care have been implemented at the Home, the

changes have largely improved the quality of care.  The Director had a rational basis for all

---

[1] To the extent that Plaintiff's complaint can be read as a challenge to the Agency's
interpretation of 24 U.S.C. 413, the Agency's is entitled to deference in its interpretation, where
as here, the statute is ambiguous.  Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837 (1984)

changes that have been implemented.  His actions have succeeded in meeting the dual (and often competing) requirements of Congress; high quality, yet cost effective.

Plaintiffs complain that a primary treatment room was closed that was staffed by doctors and physician assistants (PAs) twenty four hours a day, seven days a week. Plaintiff's Complaint at Paragraph 18(d) [Hereinafter Pl. Compl ¶ x].  The Home still provides medical care twenty four hours a day seven days a week, albeit in a different manner.  The Home employs physicians to see patients on week days rather than less qualified PAs.  After hours a registered nurse provides care with a physician on call for consultations.  Def Exh A ¶6.

Plaintiffs also complain that The Home has dismissed several physicians and all of the PAs.  Pl. Compl ¶ 20.  However, Mr. Cox explains that the PAs were not certified and did not fully comply with applicable health care standards.  Def Exh A ¶6.  Patients are now seen by a physician. Def Exh A ¶ 6b.  This change was implemented after the lack of certification was specifically cited  by the Navy Inspector General during a Secretary of Defense Triennial Review.  Def Exh ¶6.  Surely the director of the the Home has the discretion to correct deficiencies found during inspections and reviews.

Plaintiffs' further complain that closure of the primary treatment room resulted in the loss of two dentists and one dental hygienist.  Pl. Compl ¶ 18(d).  Mr. Cox explains that "the dental clinic was recently relocated and is now collocated with independent living residents to provide enhanced and more accessible dental services."  The dental clinic is state of the art and allows for the reading of dental x-rays on site.  More extensive dental care is provided by referral.  Finally, Mr. Cox explains that, based on his 20 years experience operating retirement homes, that this

dental care is consistent with the standard of care provided in the military and in private sector

Continuing Care Retirement facilities.  Def Exh A ¶ 6.

    The Home no longer operates its own a pharmacy 24 hours a day.  However, pharmacy

services are still provided to residents.  Def Exh A ¶ 6.  To save money the Home discontinued

operation of the pharmacy for Independent Living Residents and instead provides provides for

them a medication room for medications obtained by prescription through Walter Reed Army

Medical Center.  Def Exh A ¶6.  For Long Term Care patients the Home employs a contract

pharmacist to provide medications.  Def Exh A ¶6.  Additionally, the Home provides medication

free of charge to residents who become ill after hours, on weekends or holidays.  Def Exh A ¶6.

    The most perplexing allegations advanced by plaintiffs regard X-ray and EKG services.

EKG services have not changed and X-ray services were suspended because of unsafe, obsolete

equipment but have been restored employing a contract vendor.  Def Exh A ¶6.  Similarly,

plaintiffs' complaints regarding transportation have been addressed by the Home.  The Home

provides after hours non-emergency transportation for residents requiring medical care.  Def Exh

6 ¶ 6(d). The Home has never provided ambulance services for emergency transportation.  Def

Exh 6 ¶ 6(d).

    Pursuant to the Agency's statutory mandate to provide the residents high quality health

care in a cost effective manner, 24 U.S.C. §413, Mr. Timothy Cox, the Home director has

instituted a series of changes to the manner in which health care services are provided to the

residents.  The plaintiffs may disagree with a particular choice made; however, the choice of one

particular action over another is not arbitrary, capricious or an abuse of discretion "'simply

because one may happen to think it ill-considered, or to represent the less appealing alternative

13

solution available.'" <u>Fund for Animals v. Babbitt</u>, 903 F. Supp. 96 (D.D.C. 1995), citing <u>Hondros</u>

<u>v. United States Civil Service Comm'n</u>, 720 F.2d 278, 295 (3d Cir. 1983) (quoting Calcutta E.

Coast of India & E. Pakistan v. Federal Maritime Comm'n, 130 U.S. App. D.C. 261, 399 F.2d

994, 997 (D.C. Cir. 1968)).  The decisions regarding health care at the Home are rational, based

on relevant factors and not  clear errors of judgment, therefore, the court may not substitute its

judgment for that of the agency.  <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402,

416 (1971).

### III.  CONCLUSION.

Plaintiffs fail to state a claim upon which relief may be granted because the statute

allegedly violated provides no judicially manageable standards against which to judge the

agency's actions.  24 U.S.C. § 413 requires the Home to provide "high quality" health care in a

"cost-effective" manner.  The statute provides no basis for judging the application of these two

competing requirements. Alternatively, defendant is entitled to Summary Judgment because the

agency's decisions regarding health care are not arbitrary and capricious..


Respectfully  submitted,


_____

KENNETH L.  WAINSTEIN., D.C.  Bar #451058
United States Attorney


_____

R.  CRAIG  LAWRENCE, D.C.  Bar #171538
Assistant United States Attorney


14

_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 353-9895

Of Counsel:
Major Patrick Gary
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia 22203-1837

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARTIN CODY et al.** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **Civil Action No. 05-1041 (RJL)** |
| | ) |
| **THE HONORABLE DONALD RUMSFELD** | ) |
| Secretary of Defense et. al. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## WHICH ARE NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h) and in support of Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, Defendant respectfully submits this statement of material facts as to which there are no genuine disputes.

1.  The Armed Forces Retirement Home (AFRH) consists of the Armed Forces Retirement Home – Washington, located in Washington, D.C., and the Armed Forces Retirement Home – Gulfport, in Gulfport, Mississippi. Both homes are continuing care retirement communities, which provide residences and related services for certain retired and former members of the Armed Forces. Defendants Exhibit A ¶ 3; Hereinafter Def Exh A ¶ x.

2. The AFRH is funded by Congressional authorization for funds to be expended from a Trust Fund held by the United States for operation of the AFRH. The Trust Fund receives its revenues from money collected from monthly active duty payroll deductions from enlisted soldiers (currently fifty cents per month), resident fees, fines and forfeitures from the Armed Forces, gifts, bequeaths, and interest earned on the balance of the AFRH Trust Fund. Each year Congress

1

provides the AFRH with a lump sum appropriation from the Trust Fund. Def Exh A ¶ 4;
Plaintiffs' Complaint ¶ 15; [Hereinafter Pl. Compl ¶ x].

3.  From 1995 until 2003 operating expenses of the AFRH had exceeded the revenues going into
the Trust Fund held for operation of the AFRH.  The balance of the Trust Fund had declined
from $156 million in 1995 to $94 million dollars in 2003.  Def Exh A ¶ 5.

4.  The Home provides on site routine and emergency dental care as well as providing referrals to
off-site dentists. Def Exh A ¶ 6a

5. Each resident of AFRH is assigned one of the Home's  4 physicians as a primary care giver.
Def Exh A ¶ 6b.

6.  AFRH recently eliminated five physician assistant positions.  Def Exh A ¶ 6b;  Pl. Compl. ¶
20.  The former physician assistants were not certified and did not fully comply with required
healthcare standards. Def Exh A ¶ 6b

7.  The AFRH provides twenty-four hour medical coverage.  A physician is assigned to the
Community Health Clinic, Monday through Friday, from 7:30am until 4:00pm.  After hours a
Registered Nurse is in the Community Health Clinic from 4:00pm until 12 midnight to assess
and assist residents in the independent setting. After midnight a Registered Nurse is available.  A
physician is on-call between the hours of 4:00pm until 7:30am seven days a week for
consultation with the on duty nurse. Def Exh A ¶ 6c.

8.  AFRH-Washington provides residents after hours non-emergency transportation from 8:00
pm until 8:00 am at no cost.  After hours non-emergency transportation will cover transportation
to the Walter Reed Army Medical Center, the Veterans Administration, the Washington Hospital
Center and Providence Hospital. Def Exh A ¶ 6d.

2

9.  The AFRH does not operate a pharmacy but provides Independent Living residents a
medication room for medications obtained through prescription from Walter Reed Army Medical
Center.  Independent residents receive new medications the same day; however, refills take three
days, which is consistent with the service delivery model used throughout the military.
Long Term Care residents receive their medication through a contract pharmacy called
Neighborcare.  AFRH-Washington provides residents medications after hours in the Community
Health Office free of charge.  The Community Health Nurse calls the physician on-call should
residents become ill after hours, on weekends, or on holidays. Def Exh A ¶ 6

10.  AFRH provides X-ray services through a contract vendor who comes to the resident's
bedside or room.  The resident's insurance is billed for the services and those who do not have
insurance are covered by AFRH. Def Exh A ¶ 6f.

11.  AFRH provides EKG services upon a physician's request.  Def Exh A ¶ 6f.

12.  AFRH provides on site psychiatric care.  A psychiatrist from Walter Reed Army Medical
Center comes to the Home one day per week for the entire day.  A psychiatrist is available
throughout the week at Walter Reed for any mental health needs of the residents.  If residents
need further psychiatric assistance, they are referred to the VA or Washington Hospital.   Def
Exh A ¶ 6g.


Respectfully submitted,


_____

KENNETH L. WAINSTEIN, DC Bar #451058

3

United States Attorney


_____

R. CRAIG LAWRENCE, DC Bar #171538
Assistant United States Attorney


_____

KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 353-9895

Of Counsel:
Major Patrick Gary
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837

4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARTIN CODY et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) **Civil Action No. 05-1041 (RJL)** |
| | ) |
| **THE HONORABLE DONALD RUMSFELD** | ) |
| **Secretary of Defense et. al.** | ) |
| | ) |
| **Defendants.** | ) |

## <u>ORDER</u>

Upon consideration of Defendant's Motion to Dismiss or in the Alternative for Summary

Judgment and the opposition thereto, and the Court having considered the entire record herein, it

is, this _____ day of _____, 2005,

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that judgment shall be entered for Defendant, and that this matter is

hereby DISMISSED WITH PREJUDICE.

This is a final, appealable order.

SO ORDERED.

_____
Richard J. Leon
United States District Judge

Copies to:

David H. Bamberger, Esquire
1200 Nineteenth Street N.W
Washington, D.C.  20036-2412

Kevin K. Robitaille
Special Assistant U.S.  Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530