## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Martin Cody, et al.,         ) | |
|                          ) | |

Martin Cody, et al.,

     Plaintiffs, Individually and as
     Class Representatives,

vs.

The Honorable Donald Rumsfeld &
     Timothy C. Cox,

     Defendants.

Civil Action No. 1:05CV01041

CLASS ACTION

---

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs Martin Cody, Louis Spirito, William A. Jentarra, William M. Marrow, William D. Woods, John Colburn, Eugene Hill, Jr., Franklin E. Cook, Jr., Gracie W. Carpenter, Charles E. Recla, Boyton H. Snee, Benedetto D. Renzi, Theodore Wilson, Michael R. George, Warren D. Helm, Homer C. Rutherford, by and through their undersigned counsel, hereby move that this Court grant class certification for the above-captioned matter, pursuant to Rules 23(c)(1) and 23(b)(2) of the Federal Rules of Civil Procedure, and Local Rule 23.1 of the United States District Court for the District of Columbia, for the following plaintiff class:

> All current residents of the Armed Forces Retirement Home
> facility at its Washington, D.C. location.

The grounds for this *Motion for Class Certification* are fully stated in the accompanying Memorandum of Points and Authorities and in the Affidavit of David H. Bamberger filed herewith.

Respectfully Submitted,

David H. Bamberger (D.C. Bar No. 362285)
J. David Folds (D.C. Bar No. 449791)
Dimitra D. Joannou (D.C. Bar No. 488973)
DLA PIPER RUDNICK GRAY CARY U.S. LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036
Phone: (202) 861-3900
Fax: (202) 223-2085

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARTIN CODY, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) |
| | ) Civil Action No. 05-1041 (RJL) |
| HONORABLE DONALD RUMSFELD, et al. | ) |
| Defendants. | ) |

## AFFIDAVIT OF DAVID H. BAMBERGER
## IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

David H. Bamberger, being duly sworn, hereby deposes and states:

1.      I am David H. Bamberger.  I am over eighteen years of age and competent to be a witness in this proceeding.  I have personal knowledge of the matters referred to herein by virtue of my position as a Partner in the law firm of DLA Piper Rudnick Gray Cary US LLP ("DLA Piper").

2.      I became licensed to practice law in the State of Maryland in 1981 and became licensed to practice law in the District of Columbia in 1982.  I am a member of the bars of the United States District Court for the District of Columbia, the United States District Court for the District of Maryland, the U.S. Courts of Appeals for the First, Fourth, Seventh, Eighth and Ninth Circuits as well as the Supreme Court of the United States.

3.      For the entire time since I was first licensed to practice law in 1981, I have maintained an active litigation practice.  I have tried dozens of cases and have

represented parties in a number of class actions around the country. I also have substantial experience litigating cases involving health care issues.

4.    DLA Piper has agreed to represent the named plaintiffs in this action and the class that the plaintiffs propose to represent on a pro bono basis. Since the firm's acceptance of this engagement in the fall of 2004, the team of lawyers representing the plaintiffs in this action already has provided hundreds of hours of legal services to the plaintiffs, and the firm is committed to continue to seek relief for the residents of the Armed Forces Retirement Home in Washington, D.C. through the prosecution of this action.

5.    Attached hereto as Attachment A is a general description of the experience of DLA Piper in connection with class action matters. Based upon information provided to me by sources within the firm that I consider to be reliable, it is my belief that the description provided in Attachment A is fair and accurate.

I hereby declare and affirm under the penalties of perjury that the foregoing is true and correct.

David H. Bamberger

Subscribed and sworn to before
me this 22nd day of August, 2005.

Notary Public
My Commission Expires: 4-16-10

2

## ATTACHMENT A TO THE AFFIDAVIT OF DAVID H. BAMBERGER

With a litigation department that has more than 550 lawyers in 20 offices throughout the United States, and 53 offices worldwide, DLA Piper Rudnick Gray Cary US LLP ("DLA Piper") regularly represents clients in class action suits.  The firm has served as national class action and trial counsel to many of the world's leading corporations, and continues to do so.  Moreover, DLA Piper's clients are quite diverse, providing the firm with class action experience rising from a variety of markets and disputes.  The firm's clients include market-leading financial services and insurance groups, major pharmaceutical companies and automotive manufacturers, one of the nation's largest credit bureaus, international aerospace and defense corporations, and an international telecommunications company.

The following matters are a representative sampling of the firm's class action practice:

- Successful defense of financial institution in class action lawsuit claiming fraud in connection with institution's acquisition of multi-million dollar mortgage portfolio.

- Representing one of the world's largest financial institutions in the multibillion-dollar, multi-district litigation involving allegations of late trading and market timing in the mutual fund industry.

- Representing one of the nation's largest homebuilders and several individual officers in a consolidated class action asserting claims for securities fraud.

- Representation of one of the world's leading financial service companies in a class action in New York County Supreme Court regarding going-private merger and issuance of fairness opinion by the client as financial adviser to the company's board.

- Representation of one of the nation's three largest credit bureaus in more than a dozen nationwide class action lawsuits, seeking a total of $19 billion in damages, alleging that the use of certain consumer data for marketing purposes violated consumers' privacy rights under the FCRA and state law.

- Longstanding representation of major domestic and international automotive manufacturers as national or regional counsel, including multiple class actions pending throughout the U.S.

- Representation of a major pharmaceutical manufacturer in the "phen/fen" diet drug litigation, a mass tort proceeding involving thousands of cases filed across the United States. We defended individual claims, as well as class litigation, in state courts and in federal cases consolidated as part of a multi-district litigation proceeding.

- Representation of an officer and director of a REIT in the District of Massachusetts in a securities class action alleging that the financial statements of the REIT were fraudulent because they misstated the value of some of the REIT's assets.

- Longstanding representation of international telecommunications company in alleged overbilling and shareholder class actions in numerous jurisdictions.

- Representation of a NYSE-listed company and its directors in class actions in Delaware and Texas alleging breaches of fiduciary duty arising from the proposed merger of the company and an allegedly affiliated buyer as well as from the company's alleged refusal to permit another bidder to conduct due diligence.

- Representation of several executives in a federal criminal investigation in the Southern District of New York and in federal civil and class actions in New York and Los Angeles.

2

- Representation in California of multinational manufacturing company in employment class actions alleging race and sex discrimination and disability discrimination.

- Representation of an international investment bank in separate class actions pending in the Southern District of New York alleging an antitrust conspiracy among over twenty securities underwriting firms to fix the percentage of the offering proceeds known as the underwriters' discount with respect to certain categories of initial public offerings.

- Representation of an international investment bank in a class action alleging a price-fixing conspiracy among a number of securities broker-dealers to allegedly restrict "flipping"—that is, the quick resale of stock obtained by retail investors in initial public offerings.

- Representation of a multinational publicly traded company in SEC, congressional, and Department of Justice inquiries, and in related securities class actions filed in the Southern District of New York, arising from the company's earnings restatement.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Martin Cody, et al.,                          )
                                              )
    Plaintiffs, Individually and as      )
    Class Representatives,               )
                                              )         Civil Action No. 1:05CV01041
vs.                                           )
                                              )         CLASS ACTION
The Honorable Donald Rumsfeld &               )
    Timothy C. Cox,                      )
                                              )
    Defendants.                          )
                                              )

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

David H. Bamberger (D.C. Bar No. 362285)
J. David Folds (D.C. Bar No. 449791)
Dimitra D. Joannou (D.C. Bar No. 488973)
DLA PIPER RUDNICK GRAY CARY U.S. LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036
Phone: (202) 861-3900
Fax: (202) 223-2085

Attorneys for Plaintiffs

**Table of Contents**

Table of Contents...........................................................................................i

Table of Authorities.......................................................................................ii

INTRODUCTION...................................................................................1

STATEMENT OF THE FACTS....................................................................1

I.     District of Columbia Branch of the Armed Forces Retirement Home
       – The "Old Soldier's Home"............................................................1

II.    Plaintiffs and Residents of the Home............................................5

III.   Defendants..................................................................................6

ARGUMENT..........................................................................................6

I.     Statement of the Applicable Law...................................................6

II.    The Proposed Class......................................................................8

III.   The Proposed Class Meets the Threshold Requirements for Class Certification
       Pursuant To Rule 23(a) of the Federal Rules of Civil Procedure.....................9

       A.     The Class Is So Numerous that Joinder of All Members Is Impracticable.........9

       B.     There Are Both Questions of Fact and Law Common To the Class.............10

       C.     The Claims Presented By the Sixteen Named Plaintiffs Are Typical
              of the Claims Presented By All the Class Members..............................13

       D.     The Sixteen Named Plaintiffs as well as Class Counsel Will Both Fairly
              and Adequately Protect the Interests of the Class..............................15

              1.     Adequacy of Class Representatives   ...........................................15

              2.     Adequacy of Class Counsel................................................17

E.     Requirements for Class Certification Under Rule 23(b)(2).............................20

CONCLUSION.......................................................................................22

## Table of Authorities

**Cases**

Adair v. England, 209 F.R.D. 5 (D.D.C. 2002)…………………………………………6, 8, 10, 12-13

Amchem v. Windsor, 521 U.S. 591 (1997)……………………………………….……6, 8, 15-16

Bynum v. District of Columbia,  217 F.R.D. 43 (D.D.C. 2003)… 6, 7, 9, 11, 13, 14-15, 18, 20-21

East Tex. Motor Freight System, Inc. v. Rodriguez, 41 U.S. 395 (1977)  …………….……15-16

Equal Employment Opportunity Commission v. Printing Industry
    of Metro. D.C., 92 F.R.D. 51 (D.D.C. 1981)…………………………………….………10

Eubanks v. Billington, 110 F. 3d 87 (D.C. Cir. 1997)…………………………………...……20

Franklin v. Barry, 909 F. Supp. 21 (D.D.C. 1995)…………………………………….……10, 16

General Telephone Co. of Southwest v. Falcon, 457 U.S. 147 (1982)………………....…13, 15

Jarvaise v. Rand Corp., 212 F.R.D. 1 (D.D.C. 2002)……………………………….……10, 13-14

Kifafi v. Hilton Hotels Ret. Plan, 189 F.R.D. 174 (D.D.C. 1999)……………………….……11

Phillips v. E. T. Klassen, 502 F.2d 362 (D.C. Cir. 1974)………………………….…..…..……16

Pigford v. Glickman, 182 F.R.D. 341 (D.D.C. 1998)…………………………….……6-9, 13, 17-18

Stewart v. Rubin, 948 F.Supp. 1077, 1092 (D.D.C. 1996)……………………….…...…….....…….7

Thomas v. Christopher, 169 F.R.D. 224 (D.D.C. 1996)……………………………………….……10

Wells v. Allstate Insurance Co., 210 F.R.D. 1 (D.D.C. 2002)………………....…...8, 11-16, 18-19

**STATUTES**

24 U.S.C. §411…………………………………………………………………………….1, 2, 6

24 U.S.C. §413…………………………………………………………………….2-3, 9-11, 14, 21

24 U.S.C. §415……………………………………………………………………………….…6

24 U.S.C. §431………………………………………………………………….………...…6

**RULES**

Fed. R. Civ. Pro. 23……………………………………………………....1, 7-10, 13, 15, 20-22

LCvR 23.1 of the Local Rules of the U.S. District Court for the District of Columbia…………..1

## INTRODUCTION

Plaintiffs Martin Cody, Louis Spirito, William A. Jentarra, William M. Marrow, William D. Woods, John Colburn, Eugene Hill, Jr., Franklin E. Cook, Jr., Gracie W. Carpenter, Charles E. Recla, Boyton H. Snee, Benedetto D. Renzi, Theodore Wilson, Michael R. George, Warren D. Helm, and Homer C. Rutherford ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification.  Plaintiffs, sixteen residents of the District of Columbia branch of the Armed Forces Retirement Home, seek certification as representatives for a proposed class of all current residents of that Home pursuant to Rule 23 of the Federal Rules of Civil Procedure and Local Rule 23.1 of the United States District Court for the District of Columbia.  Plaintiffs are filing this motion for class certification as soon as has been practicable after the commencement of the action.  See Fed. R. Civ. Pro. 23(c)(1).  Plaintiffs seek certification of their proposed class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE FACTS

I.    **District of Columbia Branch of the Armed Forces Retirement Home – The "Old Soldier's Home."**

The Armed Forces Retirement Home ("AFRH") is an independent establishment under the Executive Branch, created for the sole purpose of providing residences and related services for retired and former members of the United States Armed Forces.  24 U.S.C. § 411(b).  The AFRH consists of two separate facilities: (i) the facility, located in the District of Columbia (the "Home"), which was formerly the United States Soldiers' and Airmen's home; and (ii) the Armed Forces Retirement Home – Gulfport (the "Gulfport facility"), located in Gulfport, Mississippi, which was formerly the Naval Home.  24 U.S.C § 411(c).  Currently, the Home is a full-time residence for approximately 1,000 Army, Navy, Marine and Air Force veterans.  Of the

veterans residing at the Home, approximately 800 live independently, while the remaining reside in King Health Center, the Home's assisted living and nursing facility. Compl. ¶ 14. Most of the residents retired after twenty or more years of dedicated service in the Armed Forces, some having suffered disabilities of varying severity. Many of the Home's residents are indigent, and all are on limited, fixed incomes. Id.

Residents depend upon the services provided under the direction of the Home's Chief Operating Officer, a position currently held by Defendant Timothy C. Cox. 24 U.S.C. § 413(a); Compl. ¶ 6. The Chief Operating Officer controls the management of the Home, subject only to the "authority direction, and control of the Secretary of Defense," 24 U.S.C. § 411(d)(1), a position currently held by Defendant Donald Rumsfeld. Compl. ¶ 5. The Secretary of Defense and the Chief Operating Officer, as the officials charged with directing and managing the Home, are *required* by statute to provide on-site, high-quality medical and dental care services for the care of the veterans residing at the Home:

> (b) Medical and dental care
>
> The Retirement Home *shall provide* for the *overall health care* needs of residents in a *high quality* and cost-effective manner, including *on-site primary care, medical care, and a continuum of long-term care services.* Secondary and tertiary hospital care for residents that is not available at a facility of the Retirement Home shall, to the extent available, be obtained by agreement with the Secretary of Veterans Affairs or the Secretary of Defense in a facility administered by such Secretary. The Retirement Home shall not be responsible for the costs incurred for such care by a resident of the Retirement Home who uses a private medical facility for such care. The Retirement Home may not construct an acute care facility.

24 U.S.C. § 413(b) (emphasis added).

On or about May 24, 2005, sixteen residents of the Home, on behalf of themselves and others similarly situated, brought suit against Defendant Donald Rumsfeld and Defendant

Timothy C. Cox in their official capacities for violations of Section 413 of Title 24 of the United States Code. Mr. Cox, with Secretary Rumsfeld's approval, has embarked on a series of cost-cutting measures which have reduced and eliminated health care services that the Home provided before Mr. Cox's tenure as Chief Operating Officer. Compl. ¶ 17. These cutbacks have, and continue to, adversely affect the health, welfare and well-being of Plaintiffs and all other residents of the Home. Compl. ¶¶ 17, 28, 30. The death and suicide rates at the Home have increased: In 2000, there were fifty-nine deaths at the Home; in 2003, that number more than doubled to 131. Compl. ¶ 30.

Before Mr. Cox's cutbacks, the Home provided a primary treatment room, staffed by doctors and physician's assistants, and available to all Home residents for their health care needs twenty-four hours a day, seven days a week. Compl. ¶ 18. On November 10, 2003, however, the primary treatment room was closed and all of the services it made available to residents were terminated or reduced. Compl. ¶ 19. Several physicians and all of the Home's physician's assistants were dismissed. Compl. ¶ 20. The remaining two nursing stations at the Home provide medical services for only eight hours a day, five days a week. Id. At the direction of Home management, there is also no longer a physician on duty at the Home during nights and weekends; during these times, Home residents in need of health care can speak with a nurse who will call either a physician located off-site, or 911 for transportation to another facility. Compl. ¶ 21.

As a result of the closing of the treatment room and the reductions in medical staff at the Home, annual physical examinations of the residents have been reduced. Compl. ¶ 28. The overall physical, medical, and psychological condition of Home residents, therefore, is no longer monitored by medical staff as frequently or thoroughly as it was before the Defendants'

cutbacks. Id. Dental services staff have also been reduced – there is now only one dentist on staff at the Home, charged with the care of the entire resident population. Compl. ¶ 29. Residents now wait months for an appointment, and dental emergencies often are not addressed in a timely and appropriate fashion. Id. As a result, residents are frequently forced to seek dental care off-site from private dentists at their own expense. Id.

Additionally, because of the cutbacks implemented by the Defendants, the remaining medical and nursing personnel providing services at the Home often lack necessary medical supplies, which negatively impacts the quality of care they can provide to the Home residents. For instance, unsterile dressings have been used to provide medical care to residents on occasion, due to the Home's recent shortages in sterile dressings and medical supplies. Compl. ¶ 22. Further, nursing staff have had to purchase supplies on their own at drugstores in order to provide basic primary care for residents. Id. X-ray services, electrocardiogram services, gastrointestinal procedures, and ostomy are also no longer provided on-site at the Home because of the Defendants' cost-cutting measures. Compl. ¶ 23. Further, the Defendants have eliminated the Home's provisions to prescribe and administer medications to outpatients over weekends at the Home. Compl. ¶ 24.

The Home's transportation services have also been reduced, making it far more difficult for all residents, and especially those with disabilities, to obtain medical treatment and health services that the Home does not provide on-site. Compl. ¶ 25. Previously, vehicles were available twenty-four hours a day to take residents from the Home to Walter Reed Hospital, Bethesda Naval Hospital, or other area hospitals. Now, however, residents needing health care not available at the Home commonly are instructed to "call 911," for ambulatory transport to the nearest area hospital, where they are treated as civilians rather than dedicated veterans. Compl. ¶

26.  Residents must pay not only for such ambulance transport, but also for the non-covered medical expenses they incur from having to seek treatment at a civilian, rather than a military, hospital.  Id.  As a result, residents now frequently resort to taxis or private transportation if they desire treatment at Walter Reed or Bethesda Naval Hospitals.  Compl. ¶ 27.  Some residents, however, simply forego seeking treatment when it is not available on-site at the Home because of the personal expenses they would have to face from having to rely upon ambulatory or taxi transport.  Id.

The asserted rationale for these cutbacks in health services at the Home is the need to reduce costs.  Compl. ¶ 31.  Significantly, the Defendants have failed to utilize a readily available option to increase the funding for the Home.  In 1994, Congress amended 37 U.S.C. § 1007(i) to authorize the Department of Defense to increase the 50 cent monthly assessment deducted from the pay of active military personnel for the AFRH's trust fund revenue to $1.00 per month.  This increased deduction, if implemented, would generate approximately $7 million annually in additional revenue for the AFRH.  Secretary Rumsfeld has not authorized this increase in the payroll deduction.  Id.

## II.    Plaintiffs and Residents of the Home.

The Plaintiffs are full time residents of the Home and are former members of the United States Armed Services.  Mr. Cody is a member of the United States Navy (retired).  Mr. Spirito is a member of the United States Air Force (retired).  Mr. Jentarra is a member of the United States Air Force (retired).  Mr. Marrow is a member of the United States Army (retired).  Mr. Woods is a member of the United States Army (retired).  Mr. Colburn is a member of the United States Army (retired).  Mr. Hill is a member of the United States Navy (retired).  Mr. Cook is a member of the United States Air Force (retired).   Ms. Carpenter is a member of the United

States Army (retired). Mr. Recla is a member of the United States Army (retired). Mr. Snee is a member of the United States Army (retired). Mr. Renzi is a member of the United States Air Force (retired). Mr. Wilson is a member of the United States Army (retired). Mr. George is a member of the United States Navy (retired). Mr. Holm is a member of the United States Army (retired). Mr. Rutherford is a member of the United States Air Force (retired). <u>Compl</u>. ¶ 4.

## III.     **Defendants.**

Defendant Rumsfeld is the Secretary of Defense, and in his official capacity is responsible for the administration of the Home. <u>See</u> 24 U.S.C. §411(d)(1). <u>Compl</u>. ¶ 5. Defendant Cox is the Chief Operating Officer of the Home, and in his official capacity directly controls the management of the Home. <u>See</u> 24 U.S.C. §411(d). <u>Compl</u>. ¶ 6. Defendant Cox was appointed by Defendant Rumsfeld in September of 2003, pursuant to the National Defense Authorization Act of 2002, to replace the AFRH Board of Trustees that had governed the Home for more than ten years. Press Release, United States Department of Defense, <u>Armed Forces Retirement Home Names Chief Operating Officer</u> (Aug. 12, 2002), http://www.defenselink.mil/ releases/2002/b08122002_bt417-02.html. <u>See</u> <u>also</u>, 24 U.S.C. §§ 415(a), 431.

## ARGUMENT

## I.     <u>Statement of the Applicable Law.</u>

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Subsection (a) of the Rule lays out four prerequisite conditions that all classes seeking certification must satisfy, and subsection (b) discusses the specific requirements for each of three distinct types of classes. <u>See</u> <u>Amchem v. Windsor</u>, 521 U.S. 591, 613 (1997). <u>See also</u>, <u>Bynum v. District of Columbia</u>, 217 F.R.D. 43, 45 (D.D.C. 2003); <u>Adair v. England</u>, 209 F.R.D. 5, 7 (D.D.C. 2002); <u>Pigford v. Glickman</u>, 182 F.R.D. 341, 346 (D.D.C. 1998). As a general rule,

however, Plaintiffs must first demonstrate that their proposed class is sufficiently well-defined before a court will engage in a Rule 23 analysis. See Pigford, 182 F.R.D. at 346. "Although Rule 23…does not specifically require plaintiffs to establish that a class exists, this is a common-sense requirement and courts routinely require it." Id. The test for class existence requires only that plaintiffs "at least be able to establish that 'the general outlines of the membership of the class are determinable at the outset of the litigation…In other words, the class must be sufficiently definite 'that it is administratively feasible for the court to determine whether a particular individual is a member.'" Id. at 346 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760 at 118, 121); Bynum v. District of Columbia, 217 F.R.D. 43, 45 (D.D.C. 2003). Once it is determined that a proposed class is well-defined, plaintiffs must demonstrate that the class satisfies the conditions of Rule 23.

Under Rule 23(a), class certification is appropriate when "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a). Additionally, plaintiffs' proposed class must also satisfy one of three distinct types of classes, as defined under Rule 23(b). The Plaintiffs seek to certify a Rule 23(b)(2) class, which requires that they establish Defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. Pro. 23(b)(2). In a Rule 23(b)(2) class action, injunctive and/or declaratory relief must be the predominant relief sought for the class. See Stewart v. Rubin, 948 F.Supp. 1077, 1092 (D.D.C. 1996) (citing Advisory Committee notes to Rule 23(b)(2)).

In proposing a class for certification, therefore, the plaintiffs must demonstrate three general requirements: that the class: (1) is clearly defined; (2) meets all four threshold requirements of Rule 23(a); and (3) falls within one of the specific class types as set out in Rule 23(b).  Wells v. Allstate Insurance Co., 210 F.R.D. 1, 4 (D.D.C. 2002) (quoting Pigford, 182 F.R.D. at 345 (D.D.C. 1998), and Amchem, 591 U.S. at 614).  To meet this burden, however, plaintiffs do not need to put forth evidence addressing the merits of their claim:

> Noting that Rule 23(c)(1) instructs district courts to rule on class status "as soon as practicable after the commencement of an action brought as a class action," the Supreme Court has explained that in "determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."

Adair v. England, 209 F.R.D. 5, 9 (D.D.C. 2002) (quoting Fed R. Civ. Pro. 23(c)(1); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-178 (1974)).  A Rule 23 analysis, therefore, is entirely procedural, and plaintiffs satisfy their burden by demonstrating that the proposed class and its claims as alleged fit the requirements of Rule 23.  Id. at 9 (In conducting this analysis, not only should "the court accept[] as true the allegations set forth in the complaint,…'when a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class.'")  Id. (internal citations omitted).

## II.    The Proposed Class.

The sixteen named Plaintiffs bringing suit do so on behalf of themselves and "all other persons similarly situated pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure."  Compl. ¶ 7.  Plaintiffs allege that Defendants have failed to comply with their statutory duty to provide high quality, on-site health services at the Home, due to the elimination and/or degradation of various health care services that were previously provided to Home residents.  Compl. ¶ 1.  Plaintiffs, therefore, seek certification as representatives of the following

presently ascertainable class: "The class represented consists of *all current residents of the Home*. Plaintiffs and other class members, all veterans of the United States Military, have been adversely affected by Defendants' failure to provide high-quality medical and dental care as mandated by 24 U.S.C. § 413." Compl. ¶ 7 (emphasis added). Determining the membership of this proposed class is, therefore, easily accomplished by verifying the residential status of prospective class members either through administrative records or members' own self-verification. Because it is both "administratively feasible for the court to determine whether a particular individual is a member," Bynum, 217 F.R.D. at 45, and for a person him/herself to "determine, simply by reading the definition, whether he or she is a member of the proposed class," Id. at 46, Plaintiffs' proposed class is sufficiently well-defined to warrant Rule 23 certification analysis. See Id. (finding that a proposed class described as one "consisting of persons who were strip searched as part of their out-processing from Department of Corrections custody" was sufficiently well-defined to engage in a Rule 23 analysis).

### III.   The Proposed Class Meets the Threshold Requirements for Class Certification pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.

#### A. The Class Is So Numerous that Joinder of All Members Is Impracticable.

Rule 23(a)(1) requires that Plaintiffs demonstrate the proposed class "is so numerous that the joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). This condition does not require Plaintiffs to assert a definitive number of class members. See Pigford, 182 F.R.D. at 347 ("Mere conjecture, without more, is insufficient to establish numerosity, but plaintiffs do not have to provide an exact number...to satisfy the numerosity requirement."). To show that their proposed class is sufficiently numerous, Plaintiffs "need only provide a reasonable basis for their estimate of the putative class size." Bynum, 217 F.R.D. at 46. Based on the estimate asserted by Plaintiffs, a "common sense assumption[] about whether the class as proposed is likely to be

large enough to make joinder of all parties impracticable" can be made by the court. Id.

Plaintiffs have proposed that the class consist of all current residents of the Home. At present time, there are approximately 1000 residents at the Home. It is because the Defendants' continuing violation of 24 U.S.C. § 413 affects each person residing at the Home that all of the approximate 1000 residents fall within the scope of the class. Proposed classes of this size, as well as classes with significantly fewer members, have been held to satisfy the numerosity requirement in the District of Columbia. See Thomas v. Christopher, 169 F.R.D. 224, 237 (D.D.C. 1996) ("Although Rule 23 requires no minimum number of class members, numerosity is generally satisfied by a proposed class of at least 40."); Jarvaise v. Rand Corporation, 212 F.R.D. 1, 3 (D.D.C. 2002) (finding the numerosity requirement satisfied by a proposed class of "approximately 260 women."); Adair v. England, 209 F.R.D. 5, 8 (D.D.C. 2002) (certifying a class with 34 representative plaintiffs, estimated to contain between 700 and 1000 members). In fact, it has been stated that a class with as few as 25-30 members "should raise a presumption that joinder would be impracticable, and thus the class should be certified." EEOC v. Printing Industry of Metro. D.C., 92 F.R.D. 51, 53 (D.D.C. 1981) (citing 1 Newberg, Class Actions 1105b at 174 (1977)). The proposed class of the approximately 1000 residents of the Home, therefore, is sufficiently numerous to pass the first threshold requirement of Rule 23.

**B. Plaintiffs Claim Presents Both Questions of Fact and Law Common To the Class.**

The second threshold condition for class certification requires that the claim presents questions of fact or law common to the class members. See Fed. R. Civ. Pro. 23(a)(2). Rule 23(a)(2) does not require "commonality on each fact or every issue." Franklin v. Barry, 909 F.Supp. 21, 30 (D.D.C. 1995). Rather, commonality exists upon plaintiffs demonstrating that "'there is at least one issue, the resolution of which will affect all or a significant number of the

putative class members.'" <u>Wells v. Allstate Ins. Co.</u>, 210 F.R.D. 1, 6 (D.D.C. 2002) (quoting <u>Kifafi v. Hilton Hotels Ret. Plan</u>, 189 F.R.D. 174-176-177 (D.D.C. 1999)).

Plaintiffs, and all current residents of the Home, are statutorily entitled to high-quality, on-site health care: "The Retirement Home shall provide for the overall health care needs of residents in a high quality and cost-effective manner, including on-site primary care, medical care, and a continuum of long-term services." 24 U.S.C. § 413(b). Plaintiffs allege on behalf of themselves, and the proposed class of all current Home residents they seek to represent, that the Defendants have violated, and are continuing to violate, this statute due to a course of cost-cutting measures and reduction in health care services dating back to 2002. Specifically, the common issue of law arising from Plaintiffs' complaint is whether the Defendants' ongoing elimination and degradation of on-site health care services at the Home has violated the statutory mandate Defendants are obligated to fulfill for the benefit of *all* Home residents. In other words, the named Plaintiffs and the members of the prospective class are all intended beneficiaries of a specific health care standard Congress enacted pursuant to Section 413 of Title 24 of the United States Code, and therefore, the question whether this standard is being violated is common to all.

Plaintiffs' claim also raises a common question of fact. Specifically, the elimination and degradation of the health care services presents a factual question common to both the named Plaintiffs and all members of the proposed class. Requisite commonality can be satisfied even when the common conduct at issue affects class members in distinct ways: "Factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." <u>Bynum</u>, 217 F.R.D. at 46. Courts have held commonality exists even in several instances where the defendant's challenged conduct has manifested differently among the class members. For example, in <u>Bynum</u>, the Court

held that the DC Department of Corrections' practice of strip-searching prisoners satisfied the commonality requirement, explaining that it was the course of conduct itself that was common to the class members, not the specific harm they each suffered as a result of defendant's conduct. Id. at 47. Additionally, the Court in Wells found that the defendant insurance company's lack of full disclosure in its claims handling process was common to all class members, even though the individual claims filed by each class member differed. Wells, 210 F.R.D. at 6. Accordingly, "commonality will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Adair, 209 F.R.D. at 10 (finding commonality despite defendant's argument that plaintiffs have merely presented a series of individualized incidents, because the variety of incidents stem from defendant's common policy).

Consistent with this application of the commonality requirement, the cutbacks in regard to the available health care services at the Home is a common grievance among all Home residents. In particular, the Defendants have imposed the following cost-cutting measures, among others: (1) Closing of the Home's primary treatment room; (2) Dismissing several medical professionals, including several physicians, all physician assistants, and various levels of nursing staff; (3) Eliminating on-site x-ray, electrocardiogram services, gastrointestinal procedures, and ostomy; (4) Limiting transportation services to area hospitals; (5) Eliminating on-site pharmacy services; (6) Reducing the type and amount of basic medical supplies; (7) Restricting the availability of preventive care programs, including basic annual physical and dental examinations. Compl. ¶¶ 19-29. These cutbacks do not discriminate among Home residents – they have eliminated and/or restricted the availability of health care services to all residents of the Home. These measures adversely affect the health, welfare, and well-being of both the named Plaintiffs and all of the current Home residents whom Plaintiffs seek to represent

as a class.

Thus, Plaintiffs have demonstrated both that (1) *all* residents of the Home are entitled to a statutory standard of high-quality, on-site medical and dental care, and (2) the reduction and/or elimination of health care services at the Home has affected *all* current Home residents, including the sixteen named Plaintiffs. Upon this "'specific presentation identifying the questions of law or fact that [are] common to the claims of [the plaintiffs] and of members of the class [the plaintiffs seek] to represent,'" Adair, 209 F.R.D. at 10 (quoting General Telephone Co. of Southest v. Falcon, 457 U.S. 147, 158 (1982)), Plaintiffs have satisfied the requisite commonality needed under Rule 23(a)(2) of the Federal Rules of Civil Procedure.

### C. The Claims Presented By the Sixteen Named Plaintiffs Are Typical of the Claims Presented By All the Class Members.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Pro. 23(a)(3). Requisite typicality is satisfied upon a showing that "each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." Pigford, 182 F.R.D. at 349. See also, Wells, 210 F.R.D. 6; Jarvaise, 212 F.R.D. at 3. While typicality and commonality are often considered together,[1] the underlying purpose of ascertaining whether "the representatives of the class suffered a similar injury from the same course of conduct as the injury alleged for the entire class," Bynum, 217 F.R.D. at 47, is to (1) protect the absent class members' interests, and (2) guarantee that the "action can be efficiently maintained as a class." Pigford, 182 F.R.D. at 349.

---

[1] The Supreme Court has stated that commonality and typicality tend to merge, therefore, many courts consider these two prerequisites together. See Adair, 209 F.R.D. at 8-9 (citing General Telephone Co. v. Falcon, 457 U.S. 147, 157 n.13 (1982)).

Thus, when one or more of the class representatives presents either a unique claim, or a claim subject to a unique defense, the legal theories and evidence to support it differ from those of the general class claim(s). See Wells, 210 F.R.D. at 6; Jarvaise, 212 F.R.D. at 3. Such an atypical claim is disruptive to the management of the class action, and defeats this requirement.

The claim presented by the Plaintiffs is in complete alignment with the potential claims any proposed class member would assert on his/her own behalf regarding Defendants' violation of 24 U.S.C. § 413. Defendants' course of conduct in violating the standard of health care services they are required to provide affects all prospective class members and the sixteen named Plaintiffs similarly precisely because they are all Home residents and intended beneficiaries under the statute. The existence of factual variations in how each class member and named Plaintiff may be affected by Defendants' cutbacks does not present unique claims or defenses among them. See Bynum, 217 F.R.D. at 47 (stating that factual variations between the claims of class representatives and class members does not negate typicality). The collective injury shared by Plaintiffs and the proposed class they seek to represent is the same – they have all been adversely affected by the Defendants' violation of their statutory duty to provide high-quality, on-site health care services to the Home residents. Any resident of the AFRH seeking high-quality, on-site health care services at the Home as an individual plaintiff would assert his/her claim based upon the same statutory provision, allege the same course of conduct by the Defendants, and seek relief for the same injury – the elimination and degradation of available health care services at the Home – as the named Plaintiffs have asserted. Therefore, although the impact of Defendants' course of conduct may resonate with each prospective class member differently, the statutory issue on which Plaintiffs' claim is based, as well as the policy of cost-cutting measures implemented by Defendants, are discreet issues giving rise to a common and

typical claim among all of the Home's residents.    Because the interest among the named Plaintiffs and the absent class members regarding the Home's health care services does not deviate, the class will be efficient to manage.    Plaintiffs have demonstrated their claims are "typical of the claims or defenses of the class." Fed. R. Civ. Pro. 23(a)(3).

### D. The Sixteen Named Plaintiffs as Well as Class Counsel Will Both Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4), the final prerequisite for class certification, states that "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4). Adequacy of representation presents a twofold inquiry, requiring both that the named plaintiffs and class counsel will serve the interests of the class: "The named representative[s] must not have antagonistic or conflicting interests with the unnamed members of the class, and the representatives must appear able to vigorously prosecute the interests of the class through qualified counsel." Wells, 210 F.R.D. at 10; Bynum, 217 F.R.D. at 47.

### 1.    Adequacy of Class Representatives

The purpose of this inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625.    An adequate class representative is a person who is "part of the class and 'posses[es] the same interest and suffer[s] the same injury as the class members.'" Id. (quoting East Tex. Motor Freight System, Inc. v. Rodriguez, 41 U.S. 395, 403 (1977)).    When the claims of the representative plaintiffs are this interrelated with those of the class, "'the interests of the class members will be fairly and adequately protected in their absence.'"    Id. (quoting Falcon, 457 U.S. at 157, n.13).    The District of Columbia Circuit has explained that "unless the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by the other members of the class, it would be inequitable to recognize plaintiffs as representative, and a violation of due process to permit them to obtain a

judgment binding absent plaintiffs." <u>Phillips v. E. T. Klassen</u>, 502 F.2d 362, 366 (D.C. Cir.

1974). Representative plaintiffs, therefore, are deemed adequate when their claims are based

upon the same remedial theory as those of the class members. <u>See</u> <u>Wells</u>, 210 F.R.D. at 10 ("the

preference in this jurisdiction seems to be to certify classes that share the same legal theory of

recovery, even if there is a potential difference between claimants with respect to the damages

owed to each individual class member.").

By the above legal standards, the sixteen named Plaintiffs are more than adequate

representatives of their proposed class. As defined, the class consists of all current residents of

the Home, which includes the named Plaintiffs. Plaintiffs' claim alleges a violation of a

statutory standard intended to benefit all Home residents. <u>Compl.</u> ¶¶ 37-39. Thus, the injury

Plaintiffs have suffered, the Defendants' failure to provide the health care services mandated by

statute, affects Plaintiffs and all members of their proposed class equally. Plaintiffs, therefore,

are "part of the class and 'possess the same interest and suffer the same injury' as the class

members." <u>Amchem</u>, 521 U.S. at 625 (quoting <u>East Tex. Motor Freight System, Inc. v.</u>

<u>Rodriguez</u>, 41 U.S. 395, 403 (1977)). The injunctive relief Plaintiffs seek aims to restore the

level of health care services at the Home to its previous level and otherwise satisfy this statutory

mandate. This remedy is not contrary to the interests of the prospective class; it serves the

interests of all current Home residents. Because each resident has been adversely affected by the

Defendants' course of conduct in failing to provide high-quality, on-site health care services at

the Home, Plaintiffs will adequately and fairly represent the interests of the class.

Further, so long as commonality and typicality exist, diversity among the named

plaintiffs is not a detriment to the adequacy inquiry. Rather, a variety of representative plaintiffs

ensures that the broadest range of particular class members are represented. In <u>Franklin v. Barry</u>,

for example, upon considering a motion for class certification by a group of Hispanic prisoners of the D.C. correctional facilities, the court explained that their varying backgrounds, medical histories, and levels of English proficiency did not render the named plaintiffs inadequate. <u>See</u> <u>Franklin</u>, 909 F.Supp. at 31. In fact, the court discussed the inherent benefits to a class that an assortment of representative plaintiffs presents. <u>See</u> <u>Id.</u> (stating that the fact that the named plaintiffs were not identically situated was what enabled them to "fairly represent a cross-section of the Hispanic inmate population in the corrections institutions."). <u>See</u> <u>also</u>, <u>Pigford</u>, 182 F.R.D. at 350 ("The fact that there are over four hundred named plaintiffs representing a breadth of situations and interests provides assurance that the interests of all class members are fairly represented.").

The sixteen named Plaintiffs represent a significant cross-section of the Home population. They are all veterans of the United States Armed Services, just as the Home residents are. All four branches of service – United States Army, Navy, Air Force, and Marine Corps – are represented by the sixteen named Plaintiffs. Their collective span of service to the United States during times of war includes tours in both theaters of WWII, the Korean War, and the Vietnam War. As current residents of the Home, they have all been adversely affected, albeit in factually distinct ways, by the Defendants' common course of reducing and eliminating the on-site health care services previously available to all Home residents. Plaintiffs, therefore, fairly represent the interests of all the proposed class members because of the breadth of experiences they have had as a result of Defendants' violation of their statutory duty to provide on-site, high quality health care services.

2.   <u>Adequacy of Class Counsel</u>

As the final step in a Rule 23(a) analysis, a court's determination that class counsel is

adequate is "in effect 'the district court's Rule 23 seal of approval.'" Wells, 210 F.R.D. at 11

(quoting Pigford, 292 F.3d 918, 926 (D.C. Cir. 2002)).  To demonstrate that counsel is qualified

to "vigorously prosecute the interests of the class," plaintiffs must outline the experience class

counsel possesses, as well as counsel's particular efforts on behalf of the class to date.  See

generally, Id. at 11-12 (discussing the considerations of counsel's adequacy).  This entails

counsel detailing their experience for the court, both in regards to class action litigation

generally, and with the "field in which the suit was brought." Id. (citing 7a Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane § 1769.1 (1986)).  For example, adequate counsel for the

proposed class in Bynum, which asserted a §1983 Fourth and Fifth Amendment class action,

consisted of a "principal in a law firm specializing in complex civil rights litigation…[and] an

associate in the same firm…[who] has specialized in civil litigation." Bynum, 217 F.R.D. at 47-

48 (discussing counsels' adequacy).  Counsel for the proposed class in Wells, put forth evidence

regarding their experience with claims in the same field as the class action, effective

management and development of plaintiffs' case over a span of two years, and efforts to

competently address each requirement for Rule 23 certification in their class certification motion

and ensuing hearing. Wells, 210 F.R.D. at 12.

     The sixteen named AFRH Plaintiffs have retained counsel from DLA Piper Rudnick

Gray Cary US LLP ("DLA Piper") on a pro bono basis.  Four DLA Piper attorneys have

committed to represent Plaintiffs and their proposed class.  Both DLA Piper itself, and the

attorneys representing the Plaintiffs, have sufficient experience and knowledge regarding class

action litigation and the nature and development of Plaintiffs' case.

     DLA Piper's litigation group consists of more than 550 lawyers in 20 United States

offices and 53 offices throughout the world.  Of these, over 150 have experience with class

action litigation, allowing DLA Piper to regularly represent clients in class action suits nationwide. DLA Piper attorneys serve as national class action and trial counsel to some of the world's leading corporations, providing the firm with experience in a variety of fields and legal claims. See Attachment A to the Affidavit of David H. Bamberger, filed herewith. Additionally, DLA Piper, and more specifically its District of Columbia office, has previously represented pro bono plaintiffs in class action litigation. The firm served as class and trial counsel in Neal, et al. v. D.C. Department of Corrections, a case brought with the Equal Employment Opportunity Project on behalf of a class of corrections officers against the District of Columbia. DLA Piper successfully represented the certified class, challenging the Department's pattern and practice of sexual harassment and retaliation against its women officers. See Neal, et al., v. Director, D.C. Department of Corrections, Civ. A. No., 93-2420 (RCL) (D.D.C. filed Jan. 16, 2001) (ordering the release and distribution of settlement funds pursuant to the Special Master's amended report submitted and approved by the Court on June 28, 1999). The District Court approved a settlement for back pay and broad injunctive relief in 1999. Id.

The DLA Piper attorneys representing the AFRH Plaintiffs and proposed class are more than qualified to "vigorously prosecute the interests of the class." Wells, 210 F.R.D. at 10. The lead attorney, David Bamberger, has been a litigator for more than twenty-four (24) years, has tried dozens of cases and has been counsel for parties in a number of class actions around the country. See Affidavit of David H. Bamberger filed herewith. Mr. Bamberger also has substantial experience litigating cases involving health care issues. Id. In connection with the representation of the plaintiffs, the DLA Piper attorneys already have provided hundreds of hours of service and have committed to continue to seek relief for the residents of the Home through the prosecution of this action. Id.

**IV.     Requirements for Class Certification under Rule 23(b)(2).**

Having established that the four conditions of Rule 23(a) are satisfied, plaintiffs seeking

class certification must next demonstrate that their class falls within the parameters of one of

three class types set forth under Rule 23(b).  Because the AFRH class is not requesting monetary

relief for their claims, Plaintiffs are seeking certification pursuant to Rule 23(b)(2) which

governs classes demanding primarily injunctive and/or declaratory relief.  See Fed. R. Civ. Pro.

23(b)(2).  Specifically, the requirement for certification of a 23(b)(2) class necessitates that "the

party opposing the class has acted or refused to act on grounds generally applicable to the class,

thereby making appropriate final injunctive relief or corresponding declaratory relief with

respect to the class as a whole."  Id.  Thus, the 23(b)(2) analysis entails a two-step inquiry, in

which plaintiffs must demonstrate that (1) the defendant's conduct is generally applicable to the

class as a whole, and (2) the representative plaintiffs are seeking injunctive or declaratory relief

on behalf of the class.  See Bynum, 217 F.R.D. at 49.  The Rule 23(b)(2) class is most often

sought out for Title VII and other civil rights class actions.  In these types of cases, all class

members are adversely impacted by the defendants' challenged conduct, which can be halted by

equitable relief.  In fact, "the defining characteristic of the (b)(2) class is that it seeks declaratory

or injunctive relief applicable to the class as a whole."  Eubanks v. Billington, 110 F.3d 87, 92

(D.C. Cir. 1997).

Similar to civil rights class actions, in this action, the sixteen named Plaintiffs have

asserted a claim challenging a course of conduct by the Defendants adversely affecting each

member of the proposed class.  Defendants' elimination and degradation of the health care

services available at the Home negatively impacts every class member precisely because every

class member, as a resident of the Home, is entitled to high-quality, on-site health care services

pursuant to 24 U.S.C. § 413(b). Defendants, therefore, have "acted in a consistent manner toward members of the class so that [their] actions may be viewed as part of a pattern of activity." Bynum, 217 F.R.D. at 48. Accordingly, Defendants' violation of the statutory standard of care set forth in 24 U.S.C. § 413(b), is conduct "generally applicable to the class" as a whole. Fed. R. Civ. Pro. 23(b)(2).

Additionally, the AFRH Plaintiffs seek only equitable relief for the class. See generally Compl. Plaintiffs do not request on behalf of themselves, or the individual class members, any compensatory damages for the particular injuries suffered as a result of Defendants' statutory violation. Plaintiffs solely request an Order directing the Defendants to restore the level of services previously provided at the Home, and to otherwise provide for the overall health care needs of all Home residents on-site in a high quality manner. See generally Compl. Specifically, Plaintiffs demand that Defendants maintain certain types of health care services at the Home, including, but not limited to the following: (1) A primary treatment room, staffed by a physician on-site, twenty-four hours a day, seven days a week; (2) A pharmacy and appropriate staff to promptly fill prescriptions and medications required for the treatment of residents; (3) X-ray, electrocardiogram, and laboratory services and technicians to ensure that the primary health care needs of residents are met; (4) Staff and resources necessary to provide annual physical and dental examinations to each resident, assessing their overall physical and mental well-being; and (5) Adequate resources, such as transportation, to ensure that residents have the necessary means to obtain secondary and tertiary medical care. As required by Rule 23(b)(2), therefore, Plaintiffs are seeking only injunctive relief, and do so on behalf of the class as a whole.

Plaintiffs have demonstrated that Defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. Pro. 23(b)(2). Therefore, the requirements for this Court to certify the AFRH proposed class have been satisfied.

## CONCLUSION

Plaintiffs' proposed class of all current residents of the Home meets the requirements for class certification as set forth under Rule 23(a) of the Federal Rules of Civil Procedure. Sixteen named Plaintiffs seek to represent the well-defined class, consisting of approximately 1000 current residents of the Home. The members of this proposed class share common questions of law and fact with the named Plaintiffs. Furthermore, the claims asserted by the named Plaintiffs are typical of those of the prospective class members. Because the current residents of the Home, named Plaintiffs and class members alike, all share a similar injury due to Defendants' course of cost-cutting measures, the Plaintiffs are more than adequate representatives of absent class members interest in pursuing high-quality, on-site health care services. Additionally, class counsel has amply demonstrated their commitment and competence in litigating class actions and serving pro bono clients generally, as well as the variety of efforts counsel has undertaken to assist the Home's residents in prosecuting their interests to date.

Further, the proposed class satisfies the requirements for certification of a Rule 23(b)(2) class. All class members have been adversely affected by the Defendants' violation of their statutory duty to provide for the overall health care of Home residents in a high-quality manner. To remedy the effects of this conduct, Plaintiffs are seeking equitable relief on behalf of the class as a whole, requesting the restoration of services necessary to meet the standard of care Congress intended Home's residents to receive.

For the foregoing reasons, Plaintiffs request that this Court certify their Complaint as a class action, and grant such other relief as is just and appropriate.

Dated:  August 22, 2005                    Respectfully Submitted,
        Washington, D.C.

                                           _____
                                           David H. Bamberger (D.C. Bar No. 362285)
                                           J. David Folds (D.C. Bar No. 449791)
                                           Dimitra D. Joannou (D.C. Bar No. 488973)
                                           DLA PIPER RUDNICK GRAY CARY U.S. LLP
                                           1200 Nineteenth Street, N.W.
                                           Washington, D.C. 20036
                                           Phone: (202) 861-3900
                                           Fax: (202) 223-2085

                                           Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August 2005, true and correct copies of the foregoing Plaintiffs' Motion for Class Certification, together with the Memorandum of Points and Authorities in Support thereof, Affidavit of David H. Bamberger and proposed Order were served via first class mail, postage pre-paid, upon:

Kevin K. Robitaille
Special Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530


David H. Bamberger

- 24 -

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Martin Cody, et al., )<br><br>Plaintiffs, Individually and as )<br>Class Representatives, )<br><br>vs. )<br><br>The Honorable Donald Rumsfeld & )<br>Timothy C. Cox, )<br><br>Defendants. ) | Civil Action No. 1:05CV01041<br><br>CLASS ACTION |

## ORDER

UPON CONSIDERATION of Plaintiffs' Motion for Class Certification, and any opposition thereto, and it appearing that there are sufficient grounds and good reason therefor,

It is this _____ day of _____, 2005, ORDERED that:

1.    Plaintiffs' Motion for Class Certification be and hereby is GRANTED; and

2.    The Plaintiff class shall consist of all current residents of the Armed Forces Retirement Home facility at its Washington, D.C. location.


_____
Judge Richard J. Leon