# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MARTIN CODY, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1041 (RJL)** |
| | ) | |
| **DONALD RUMSFELD,** | ) | |
| **Secretary of Defense, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

David H. Bamberger (D.C. Bar No. 362285)
J. David Folds (D.C. Bar No. 449791)
Dimitra D. Joannou (D.C. Bar No. 488973)
Mila Z. Zain (D.C. Bar No. 490282)
DLA PIPER RUDNICK GRAY CARY U.S. LLP
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
Phone: (202) 861-3900
Fax: (202) 223-2085

Attorneys for Plaintiffs

# TABLE OF CONTENTS

INTRODUCTION ............................................................. 2

I.   THE MOTION TO DISMISS SHOULD BE DENIED. ........................ 3

     A.   APPLICABLE LEGAL STANDARD. ............................... 3

     B.   PLAINTIFFS HAVE PROPERLY PLED A JUSTICIABLE CLAIM
          UPON WHICH RELIEF CAN BE GRANTED. ...................... 4

          1.   Judicial Review Of Agency Action Under the APA Is Precluded
               Only In Rare Circumstances. ........................... 4

          2.   Section 413 Provides Meaningful Standards Upon Which To
               Judge The Agency's Duty To Provide High Quality Health Care
               Services. ............................................... 7

     C.   PLAINTIFFS ALSO HAVE A PRIVATE RIGHT OF ACTION
          UNDER THE STATUTE. ..................................... 12

II.  THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED. ....... 16

     A.   APPLICABLE LEGAL STANDARD. .............................. 17

     B.   DEFENDANTS HAVE FAILED TO PROVIDE COMPETENT
          EVIDENCE TO SUPPORT THEIR MOTION. ..................... 19

     C.   STATEMENT OF FACTS. .................................... 20

     D.   DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO
          ESTABLISH THAT THEIR CONDUCT SATISFIES THE
          STATUTORY REQUIREMENTS OF THE AFRHA. ............... 27

          1.   Defendants' Conduct Is Based Upon A Flawed Interpretation Of
               An Unambiguous Statute. .............................. 27

          2.   Defendants Have Failed To Establish That Their Actions Are "In Accordance
               With Law." ............................................ 29

               (a)   May Of The Services Available Are Not "On-Site." ....... 30

               (b)   No Basis To Find That The Health Care Provided Is
                     "High Quality." ................................. 31

3.   Defendants Have Failed To Establish That Their Conduct Has
Not Been Arbitrary And Capricious. ................................. 32

E.   PLAINTIFFS ARE ENTITLED TO DISCOVERY UNDER RULE
56(F). .................................................................... 36

CONCLUSION   .......................................................................... 39

# **TABLE OF AUTHORITIES**

## **CASES**

ACEMLA v. Copyright Royalty Tribunal, 763 F.2d 101 (2d Cir. 1985) ................. 29

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) ........................................ 17

Alexander v. Sandoval, 532 U.S. 275 (2001) ................................................. 13

Amalgamated Transit Union Int'l AFL-CIO v. Donovan, 767 F.2d 939
(D.C. Cir. 1985) ..................................................................................... 11

Arent v. Shalala, 866 F. Supp 6 (D.D.C. 1994) ............................................... 11

Berkeley v. Home Ins. Co., 68 F.3d 1409 (D.C. Cir. 1995) ............................... 37

Bowen v. Michigan Academy of Family Phys., 476 U.S. 667 (1986) .................... 4, 5

Briggs v. Sullivan, 954 F.2d 534 (9th Cir. 1980) ............................................. 10

Burlington N. Santa Fe R.R. Co. v. Assiniboine & Souix Tribes of the Fort Peck
Reservation, 323 F.3d 767 (D.C. Cir. 1995) ............................................. 37

Citizens for a Better Environment v. EPA, 596 F.2d 720 (7th Cir. 1979) ............... 29

Congress of R'way Unions v. Hodgson, 326 F. Supp 68 (D.D.C. 1971) ................. 10

Conley v. Gibson, 355 U.S. 41 (1957) ........................................................... 3

Diamond v. Atwood, 43 F.3d 1538 (D.C. Cir. 1995) ......................................... 17

Dickson v. Secretary of Defense, 68 F.3d 1396 (D.C. Cir. 1995) ........................ *passim*

Ethyl Corporation v. EPA, 306 F.3d 1144 (D.C. Cir. 2002) ................................ 29

Estate of Smith v. Heckler, 747 F.2d 583 (10th Cir. 1984) ................................. 7, 32

Evangelical Lutheran Church In Am. v. INS, 288 F. Supp. 2d 32 (D.D.C. 2003) ......... 6

Forest Guardians v. Babbitt, 174 F.3d 1178 (10th Cir. 1999) ............................... 34

Gamradt v. Block, 581 F. Supp. 122 (D. Minn. 1983) ....................................... 16

Government of Guam v. Am. Pres. Lines, 28 F.3d 142 (D.C. Cir. 1994) .................    16

Heckler v. Chaney, 470 U.S. 821 (1985) ........................................................    5, 9, 10

Hishon v. King & Spalding, 467 U.S. 69 (1984) ..............................................    4

Hondos v. Civil Service Comm'n, 720 F.2d 278 (3d Cir. 1983) ...........................    18

In Home Health, Inc. v. Shalala, 188 F.3d 1043 (8th Cir. 1999) ............................    27, 29

In Robert E. Derecktor of Rhode Island , Inc. v. Goldschmidt, 506 F. Supp. 1059
    (D.R.I. 1980) .................................................................................    29

James Madison Ltd. v. Ludwig, 82 F.3d 1085 (D.C. Cir. 1996) ............................    6

Judicial Watch, Inc. v. U.S. Dep't. of Com., 224 F.R.D. 261 (D.D.C. 2004) ..............    19, 20

Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163 (1993) ......    4

Lincoln v. Vigil, 508 U.S. 182 (1993) ...........................................................    5, 10

Lopez-Carrasquillo v. Rubianes, 230 F.3d 409 (1st Cir. 2000) ..............................    20

Mt. Emmons Mining Company v. Babbitt, 117 F.3d 1167 (10th Cir. 1997) ...............    28

Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto Ins.
    Co., 463 U.S. 29 (1983) ...................................................................    32

National Wildlife Fed. V. EPA, 980 F.2d 765 (D.C. Cir. 1992) ............................    11

Natural Resources Defense Counsel v. EPA, 22 F.3d 1125 (D.C. Cir. 1994) ..............    34

Natural Resources Defense Counsel v. Reilly, 976 F.2d 36(D.C. Cir. 1992) ..............    34

Orfanos v. HHS, 896 F. Supp. 23 (D.D.C. 1995) ............................................    18

Pierce v. Underwood, 487 U.S. 552 (1988) ...................................................    6

Phillips v. Bureau of Prisons, 591 F.2d 966 (D.C. Cir. 1979) ..............................    4

Ramah Navajo School Bd., Inc. v. Babbit, 87 F.3d 1338 (D.C. Cir. 1996) ...............    9

Robbins v. Reagan, 780 F.2d 37 (D.C. Cir. 1985) ..........................................    9

Rolland v. Romney, 318 F.3d 42 (1st Cir. 2003) ............................................    15

<u>Santor v. Morton</u>, 383 F. Supp 1265 (D. Wyo. 1974) ……………………….....    5

<u>Sarasota Memorial Hospital v. Shalala</u>, 60 F.3d 1507 (11th Cir. 1995) ………………...   28

<u>Sierra Club v. Hodel</u>, 848 F.2d 1068 (10th Cir. 1988) ………………………………   11

<u>Small Refiner Lead Phase-Down Task Force v. EPA</u>, 705 F.2d 506 (D.C. Cir. 1983) …   18

<u>Tax Analysts v. IRS</u>, 214 F.2d 179 (D.C. Cir. 2000) ………………………………...   12, 16

<u>Thompson v. Thompson</u>, 484 U.S. 174 (1988) ……………………………………   13

<u>The Fund for Animans v. Babbitt</u>, 903 F. Supp. 96 (D.D.C. 1995) ……………………   18

<u>Wichita Falls Office Assoc. v. Banc One Corp.</u>, 978 F.2d 915 (5th Cir. 1992) …………   37

<u>Williams v. Washington Metropolitan Area Transit Comm'n</u>, 415 F.2d 922
       (D.C. Cir. 1968) …………………………………………………………   28

## STATUTES

5 U.S.C. § 701, et seq. ……………………………………………………..   *passim*

24 U.S.C. § 401, et seq. …………………………………………………….   *passim*

## OTHER

Fed. R. Civ. P. 12(b)(6) ……………………………………………………..   3, 4

Fed. R. Civ. P. 56(f) ………………………………………………………...   19, 30, 36

Testimony of Dr. Dennis W. Jahnigen, Chairman Armed Forces Retirement Home
       Board before the Subcommittee on Labor, Health and Human Services,
       Education and Related Services of the House Appropriations Committee on
       June 11, 1997 ……………………………………………………………   15

Plaintiffs submit this Memorandum in opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

## **INTRODUCTION**

Plaintiffs in this case are veterans and retirees of the United States armed forces who currently reside at the Armed Forces Retirement Home located in Washington, D.C (the "Home"). Plaintiffs are entitled, by law, to high-quality on-site medical and dental services, which Defendants have failed to provide.

In an effort to avoid judicial review of this failure, Defendants argue that, under the relevant statute, 24 U.S.C. § 413, their actions are committed entirely to agency discretion and thus, not subject to judicial review. Defendants fail to mention, though, that both the Supreme Court and Congress have made clear that agency action cannot evade judicial review except under only the most exceptional circumstances, none of which are present here. Indeed, judicial review of agency action under the Administrative Procedures Act is presumed unless there is clear and convincing evidence that Congress intended to create an exception. Defendants have failed to identify any authority, either in the plain language of the statute or elsewhere, for the proposition that Congress intended to exempt Section 413 from this presumption of judicial review. Additionally, Plaintiffs are entitled to judicial review, on wholly independent grounds, because Section 413 affords them an implied private right of action. Section 413 commands an unambiguous and mandatory duty to provide high-quality, on-site health services to the Home's residents. The Complaint alleges in substantial detail that Defendants have failed to fulfill that statutory mandate, and, as explained more fully below, that failure is reviewable by this Court.

Defendants also argue that they are entitled to judgment as a matter of law because there is no genuine issue as to any material fact.  Even without the benefit of discovery or any underlying administrative proceeding, a review of the limited factual record makes plain that there are substantial and genuine factual disputes in this case.  Indeed, the only support Defendants offer to buttress their argument is a single, flawed declaration, which contradicts itself, is not based on the personal knowledge of the affiant, and cannot be considered competent evidence for the purpose of deciding a motion for summary judgment.  In any event, the evidentiary materials submitted by Plaintiffs easily demonstrate that there are genuine disputes as to the material facts in regard to whether Defendants have met their mandatory duty under Section 413.  Furthermore, Defendants' argument rests largely on the flawed premise that they are to "balance" whether the health care they are required to provide is high-quality or cost-effective.  Yet, the plain language of the statute requires as an absolute that the health care "shall" be high-quality and on-site.  Those statutorily required standards cannot be sacrificed on the basis of cost cutting.

For these reasons, Defendants' Motion to Dismiss and their alternative Motion for Summary Judgment should be denied.

## I.    THE MOTION TO DISMISS SHOULD BE DENIED.

### A.    APPLICABLE LEGAL STANDARD.

Upon a motion to dismiss, a court must construe the allegations in the Complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts.  A Court may dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).  Under Rule 12(b)(6), factual allegations in the Complaint must be presumed true and should be liberally construed in the plaintiffs' favor.  Leathermnan v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  A court may dismiss a Complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**B.    PLAINTIFFS HAVE PROPERLY PLED A JUSTICIABLE CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

In moving to dismiss, Defendants seek to rely upon a narrow exception to the general presumption that agency action is judicially reviewable.  The Supreme Court and courts in this Circuit have made clear, however, that withholding judicial review is appropriate only in the rarest of circumstances.  These circumstances do not exist here.  As explained below, Plaintiffs have properly alleged a justiciable claim reviewable by this Court and upon which relief can be granted.

**1.    Judicial Review Of Agency Action Under The APA Is Precluded Only In Rare Circumstances.**

The Administrative Procedures Act, 5 U.S.C. § 701, et seq. ("APA") provides that final agency actions are "subject to judicial review."  Dickson v. Secretary of Defense, 68 F.3d 1396, 1401 (D.C. Cir. 1995), quoting 5 U.S.C. § 704.  Analysis of a claim brought under the APA must "begin with the strong presumption that Congress intends judicial review of administrative action.  From the beginning [the Supreme Court's cases] have established that judicial review of a final agency action by an aggrieved person will not be cut off unless there is a persuasive reason to believe that such was the purpose of Congress."  Bowen v. Michigan Academy of Family Phys., 476 U.S. 667, 670 (1986) (judicial review of Part B of medicare program not

precluded) (citation omitted).  As the Supreme Court explained in <u>Bowen</u>, Congress, in passing the APA, acknowledged that "[v]ery rarely do statutes withhold judicial review."  <u>Id</u>. <u>citing</u> S. Rep. No. 752, 79th Cong. 1st Sess., 26 (1945).  Congress clearly intended that in order to "preclude judicial review under [the APA] a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it.  The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review."  <u>Id.</u>, <u>citing</u> H.R. Rep. No. 1980, 79th Cong. 2d Sess., 41 (1946), <u>reprinted in</u> U.S.C.C.A.N. 1964 at 1195.

The Supreme Court has invoked this standard "time and time again when considering whether [an agency] has discharged 'the heavy burden of overcoming the strong presumption that Congress did not mean to prohibit all judicial review of [the agency's] decision.'"  <u>Bowen</u>, 476 at 672, <u>quoting</u> <u>Dunlop v. Bachowski</u>, 421 U.S. 560, 567 (1975).  Even cases cited by the Defendants recognize that judicial review of agency action is precluded in only the rarest of circumstances.  <u>See</u> <u>Lincoln v. Vigil</u>, 508 U.S. 182, 191 (1993) (judicial review not available in "rare circumstances"); <u>Heckler v. Chaney</u>, 470 U.S. 821, 830 (1985) (precluding judicial review because decision is committed to agency discretion "is a very narrow exception").  Indeed, "[t]he only statutory exceptions to this rule are if a particular statute 'preclude[s] judicial review' or if 'agency action is committed to discretion by law.'"  <u>Dickson</u>, 68 F.3d at 1401, <u>quoting</u> 5 U.S.C. § 701(a)(1) and (2).[1]  "In the absence of such specific authorization, we do not presume . . . that Congress intended to preclude judicial review.  Rather we assume just the opposite . . . ."  <u>James</u>

---

[1]    The exception to judicial review is so narrow that even "[i]f the controversy merely 'involves' agency discretion, as opposed to being 'committed' to agency discretion, the matter is reviewable."  <u>Santor v. Morton</u>, 383 F. Supp. 1265 (D. Wyo. 1974) <u>citing</u> <u>Ferry v. Udall</u>, 336 F.2d 706 (9th Cir. 1965); <u>Gamradt v. Block</u>, 581 F. Supp 122, 125 n.1 (D. Minn. 1983) (same).

Madison Ltd. v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (court had jurisdiction under the APA to review agency decision and grant declaratory and injunctive relief).

The Armed Forces Retirement Home Act, 24 U.S.C. § 413 ("AFRHA"), on its face, does not preclude judicial review and Defendants do not, and cannot, claim that it does. See generally, Dickson, 68 F.3d at 1401 ("mere fact that statute is silent on the issue of review is not controlling" and does not alter the "strong presumption that Congress intends judicial review of administrative action").   Nevertheless, Defendants argue that this case is one of those rare circumstances in which review is not to be had because agency action under the AFRHA is committed to agency discretion by law.  The language of the statute refutes that contention:

> The Retirement Home **shall** provide for the overall health care needs of residents in a high quality and cost-effective manner, including on site primary care, medical care, and a continuum of long-term care services. Secondary and tertiary hospital care for residents that is not available at a facility of the Retirement Home **shall**, to the extent available, be obtained by agreement with the Secretary of Veterans Affairs or the Secretary of Defense in a facility administered by such Secretary....

24 U.S.C. § 413(b) (emphasis added).    Congress has unequivocally expressed the mandatory nature of the Home's obligation to provide high quality health care by using the word "shall." See Pierce v. Underwood, 487 U.S. 552, 569-70 (1988) (Congress's use of "shall" in a housing subsidy statute constitutes "mandatory language").  Notably, this Circuit has held that even the use of the permissive "may" does not unequivocally indicate that "the matter is *committed* exclusively to agency discretion."   Dickson, 68 F.3d at 1401 (emphasis in original); see also Evangelical Lutheran Church In Am. v. INS, 288 F. Supp. 2d 32, 45 (D.D.C. 2003) ("[U]se of the word 'may' is insufficient to preclude judicial review of decisions made pursuant to the regulation") (listing cases).  Even if a statute permits some agency discretion, it does not follow that judicial review is precluded.  Dickson, 68 F.3d at 1402 (agency decisions judicially

reviewable despite the fact that statute's language provides Secretary some discretion). Indeed, in this case, Defendants actually concede that the statute imposes a mandatory duty, by affirmatively acknowledging in their pleading that "the duty to provide medical care may be **non-discretionary . . . .**" Defendant's Motion to Dismiss, or In The Alternative, For Summary Judgment ("Def. Mot.") at 4 (emphasis added). In light of this mandatory duty imposed on the Defendants by Congress in the very terms of this statute, Defendants have not presented, and cannot present, "clear and convincing evidence" that defeats the presumption of judicial review in this case.

> **2.    Section 413 Provides Meaningful Standards Upon Which To Judge The Agency's Duty To Provide High Quality Health Care Services.**

Defendants also argue that review is precluded in this case on the theory that there is no meaningful standard against which to judge the agency's actions. Defendants contend that the statutory standard is expressed in terms too general to provide a judicially manageable standard and that by drafting the statute in such broad terms, there is "no law to apply." A plain reading of the statute and the case law makes clear that this is not so.

As discussed above, the statute by its terms reveals that Congress, in commanding that the agency "shall" provide high quality, on-site health care, did not leave the fulfillment of this duty or the level or location of the health care up to the agency's discretion. The statute imposes an unambiguous duty on Defendants to provide high quality health care services on-site to residents of the Home. There can be no confusion as to what "on-site" means, and courts considering provisions similar or analogous to "high quality" have readily concluded that this is a judicially manageable standard. For example, in <u>Estate of Smith v. Heckler</u>, 747 F.2d 583, 591 (10th Cir. 1984), the Tenth Circuit examined whether the Secretary of Health and Human Services was required to remain informed of the "high quality" patient care provided in

federally-funded facilities.  <u>Smith</u>, 747 F.2d at 585.  Reversing the district court, the Court of Appeals reasoned that "[t]he Act's requirements include providing high quality medical care and rehabilitative services [and that] the quality of the care provided to the aged is the focus of the Act."  The Secretary's failure to remain informed, on a continuing basis, as to whether facilities receiving federal money were meeting the requirements of the Act, (providing high-quality medical and rehabilitative services), was "an abdication of the Secretary's duty."  <u>Id</u>.  The <u>Smith</u> court had no difficulty applying the statutorily prescribed standard in regard to "high quality" medical and rehabilitative services, and  "determine[d] that the defendant official [had] failed to discharge [this] duty which Congress intended him to perform," thus, requiring the court to compel performance in order to effectuate the congressional purpose of the statute.  <u>Smith,</u> 747 F.2d at 591, <u>quoting</u> <u>Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419 v. Brown,</u> 656 F.2d 564, 566 (10th Cir. 1981).  As in <u>Smith</u>, Plaintiffs ask that this Court require the Defendants to obey the specific duty imposed by Congress.  This Court can meaningfully review whether the Defendants have met the standard expressed in the statute, as did the court in <u>Smith</u>.

The D.C. Circuit also has found meaningful standards of review in cases involving statutory duties analogous to or even less clear than the specific duty to provide on-site high quality health care services here.  For example, in <u>Dickson</u>, the Court of Appeals held that meaningful standards of review existed under a statute which directed the Secretary of a military department, generally, to correct errors on a military record in order to avoid an injustice.  <u>Dickson</u>, 68 F.3d at 1398-99.  Examining the language of the statute at issue, the Court refused to infer an intent to commit the duty to the agency's discretion, differentiating the case from those in which the agency was "given unfettered and standardless discretion."  <u>Id</u>., 68 F.3d at 1402, n.8.  Reversing the district court's grant of the government's motion to dismiss, the D.C.

Circuit found that the standards upon which the agency made its decisions were meaningful enough to allow judicial review. Id., 68 F.3d at 1401-03. "Even when there are no clear statutory guidelines, courts often are still able to discern from the statutory scheme a congressional intention to pursue a general goal." Robbins v. Reagan, 780 F.2d 37, 45 (D.C.Cir.1985).

In Ramah Navajo School Board, Inc. v. Babbit, 87 F.3d 1338, 1341 (D.C. Cir. 1996), the D.C. Circuit also reversed the district court and found the Indian Self-Determination Act ("ISDA") provided sufficient law to apply in reviewing agency action. The Ramah court held that the ISDA's mandatory allocation provisions were judicially reviewable because "[g]iven the mandatory terms of the Tribes' . . . entitlement under the Act, Congress clearly included the proviso not to excuse the Secretary's obligation to follow the mandates of the statute . . . ." Id. at 1345. The requirements set out in Section 413(b) are even more clear than the provisions examined in Ramah. In truth, the standard here is no more difficult to apply than many standards that courts routinely apply without difficulty in a variety of cases (e.g., reasonable care in a tort or malpractice case).

Defendants' reliance on Heckler v. Chaney, 470 U.S. 821 (1985) and Lincoln v. Vigil, 508 U.S. 182 (1993) is misplaced. In those cases, the Court was unwilling to find judicial review appropriate because they involved very different statutory language, and dealt with matters traditionally left entirely to an agency's discretion. Chaney dealt with "an agency's decision not to prosecute or enforce, whether through civil or criminal process [which] is a decision generally committed to the agency's absolute discretion . . . This recognition of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." 470 U.S. at 831. In ruling that the FDA's decision not to take enforcement action

was not subject to judicial review, the Supreme Court reasoned that the Secretary's decision was in the nature of prosecutorial discretion. In <u>Lincoln</u>, the Supreme Court reiterated this rationale, finding that allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion. <u>Lincoln</u>, 508 U.S. at 192.[2] In neither case did the Supreme Court find, as Defendants argue here, that a statute was written in terms too general to support judicial review, and in neither case did the Supreme Court find that an agency's decision not to fulfill a specific statutory command (e.g., that it "shall" provide high quality health services), was beyond judicial review.[3]

The agency actions in <u>Chaney</u> and <u>Lincoln</u> also were of the sort traditionally outside judicial review because the decisions at issue were uniquely in the province of the agency's expertise. <u>See</u> <u>Chaney</u>, 470 U.S. at 831-32 (FDA's decision not to "exercise its <u>coercive</u> power over an individual's liberty or property rights" was "peculiarly within its expertise") (emphasis

---

[2]    Defendants strain credulity in likening this case to <u>Lincoln</u>. In <u>Lincoln</u>, the Supreme Court specifically found that "Congress never authorized or appropriated moneys expressly for the Program" that the Indian Health Service was alleged to have improperly discontinued. 508 U.S. at 182Here, Congress specifically ordered the agency to provide the kind of services that the Home and the Secretary have failed to provide.

[3]    Defendants also rely on <u>Congress of R'way Unions v. Hodgson</u>, 326 F. Supp. 68 (D.D.C. 1971) and <u>Briggs v. Sullivan</u>, 954 F.2d 534 (9th Cir. 1980), both of which are easily distinguishable and do not support Defendants' argument. In <u>Hodgson</u>, judicial review was not permitted of the Secretary of Transportation's certification of certain arrangements to protect employees' interests because the standard articulated by the statute for the Secretary to follow (arrangements were to be "fair and equitable") was general and committed by the language of the statute to the Secretary's personal judgment. <u>Id</u>. at 73. In contrast, the duty to act here is clear, expressed in mandatory language, and the standard is not committed to the subjective judgment of a particular person.

In <u>Briggs</u>, the plaintiffs sought judicial review of the adequacy of certain investigation procedures employed by the Secretary of the Department of Health and Human Services. The court found that the matter was subject to judicial review. <u>Id</u>. at 538. However, because the statute in question required only that the Secretary investigate and did not specify any particular methods or procedures, the court concluded that the particular form of investigation was left to the Secretary's discretion. <u>Id</u>. at 538-39. Plaintiffs here ask the court to compel the Secretary and the Home to abide by the clear duty imposed by Section 413(b), which specifies that, not just health care, but high-quality, on-site health care shall be provided to the residents of the Home.

in original); <u>Lincoln</u>, 508 U.S. at 193 ("Like the decision against instituting enforcement proceedings, then, an agency's allocation of funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within its expertise'") (quoting <u>Chaney</u>). In contrast, Defendants here do not have any particular expertise with respect to high quality health, dental, and medical services or the provision of those services.

Defendants construe the AFRHA as setting up a false choice between providing high quality health care **or** cost effective health care. They contend that, as those terms are often at odds with each other, it is in the Defendants' discretion to decide how to effectuate them. (Def. Mot. at 4.) This argument ignores the very language of the statute which compels the Home to provide "high-quality **and** cost-effective" care. That is, Congress specifically directed the Home to provide health care that satisfies both. Certainly, the statute on its face says nothing about granting the Home or the Secretary the discretion to choose one over the other.

Finally, the D.C. Circuit has ruled that courts are uniquely qualified to assess a challenge to an agency's substantive statutory interpretation. <u>Arent v. Shalala</u>, 866 F. Supp 6, 12 (D.D.C. 1994) (citing <u>International Union United Automobile, Aerospace & Agricultural Implement Workers of Am. v. Brock</u>, 783 F.2d 237, 245 (D.C. Cir. 1986)); <u>see also</u> <u>National Wildlife Fed. v. EPA</u>, 980 F.2d 765, 772-73 (D.C. Cir. 1992) (upholding reviewability of EPA's administration of Safe Drinking Water Act); <u>Amalgamated Transit Union Int'l AFL-CIO v. Donovan</u>, 767 F.2d 939, 944 n.7 (D.C. Cir. 1985). "Nothing in the APA or in the holding or policy of [Chaney] precludes review of a proper plaintiff's timely challenge of an agency's announcement of its interpretation of a statute;" <u>Arent</u>, 866 F. Supp at 13; <u>National Wildlife Fed.</u>, 980 F.2d at 773 ("We believe the presumption of unreviewability of agency nonenforcement decision [enumerated in Chaney] is inapplicable or at least rebutted here"); <u>Sierra Club v. Hodel</u>, 848 F.2d

1068, 1075-76 (10th Cir. 1988) (federal courts are capable of determining whether EPA met statutory responsibility with respect to wilderness study areas because the statute "provides law to apply"), rev'd on other grounds, 956 F.2d 970 (10th Cir. 1992).

Here, the statute at issue contains mandatory language that details precisely what result must be achieved. Plaintiffs and the class they seek to represent are members of the specific group for whom the statute was enacted, and they seek to compel compliance with the clear mandate of Congress. This is not a matter committed to agency discretion, and the statutory standard is clear and manageable. Thus, Defendants' motion to dismiss should be denied.

## C.   PLAINTIFFS ALSO HAVE A PRIVATE RIGHT OF ACTION UNDER THE STATUTE.

Judicial review is also available because Plaintiffs have an implied private right of action under 24 U.S.C. § 413. The Supreme Court and the DC Circuit repeatedly have recognized that courts may, in certain circumstances, infer that the violation of a federal statute supports a private cause of action. Such a right is created when it can be inferred that Congress intended to create a private cause of action. To determine whether such a right exists,

> the Supreme Court articulated four factors for the courts to weigh in discerning congressional intent to provide an implied private right of action: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate for the court to infer such a cause of action based solely on federal law.

Tax Analysts v. IRS, 214 F.3d 179, 185-86 (D.C. Cir. 2000) (citing Cort v. Ash, 422 U.S. 66 (1975)). In recent years, the Supreme Court has refined these factors, indicating that "statutory intent . . . . is determinative" and that "[t]he judicial task is to interpret the statute Congress has

passed to determine whether it displays an intent to create not just a private right but also a

private remedy." Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001). The Court has also

explained that while the "focal point" for this analysis is Congress' intent in enacting the statute,

> Our focus on congressional intent does not mean that we require
> evidence that Members of Congress, in enacting the statute,
> actually had in mind the creation of a private cause of action. The
> implied cause of action doctrine would be a virtual dead letter were
> it limited to correcting drafting errors when Congress simply
> forgot to codify its evident intention to provide a cause of action.
> Rather, as an _implied_ cause of action doctrine suggests, the
> legislative history of a statute that does not expressly create or
> deny a private remedy will typically be equally silent or ambiguous
> on the question. We therefore have recognized that Congress'
> intent may appear implicitly in the language or structure of the
> statute, or in the circumstances of its enactment.

Thompson v. Thompson, 484 U.S. 174, 179 (1988) (emphasis in original) (quotations and

citations omitted). Congressional intent to create a private cause of action, therefore, "can be

inferred from the statute, the statutory structure, or some other source . . . ." Id.

While the Supreme Court's emphasis on congressional intent seems to have condensed

the second and third Cort factors, the others survive, and are easily satisfied in this case.

Plaintiffs, as residents of the Home, are quite clearly members of the class for whose benefit 24

U.S.C. § 413 was enacted. The statute itself speaks in unambiguous terms, explaining that "a

resident of the Home shall receive the services" that Defendants have failed to provide in this

case, and plainly indicates that the purpose of the establishment of the Home "is to provide . . .

residences and related services for certain retired and former members of the Armed Forces." 24

U.S.C. §§ 413 & 411. Moreover, 24 U.S.C. § 412 specifically details what persons are eligible

to be residents of the Home and what persons are ineligible. Each Plaintiff was required to meet

these eligibility provisions before being admitted into the Home. Furthermore, because of the

eligibility provisions required by statute, any private cause of action inferred here is available

only to a limited number of potential litigants; only residents of the Home can bring a claim if the medical services they are entitled to by statute are not provided.

It is equally clear that a private cause of action under 24 U.S.C. § 413 is not one traditionally relegated to state law. The Home "is an independent establishment in the executive branch" that receives support from the Secretary of Defense and the departments of the military on a non-reimbursable basis. 24 U.S.C. § 411. "The Chief Operating Officer shall serve at the pleasure of the Secretary of Defense" and "shall be responsible to the Secretary of Defense for the overall direction, operation, and management of the Retirement Home and shall report to the Secretary on those matters." 24 U.S.C. § 415. Thus, the statute makes clear that the Home and matters akin to it are explicitly under the guise of the executive branch, the Department of Defense, and military departments, which are traditionally relegated to federal law, not state law.

Finally in order to determine whether a private cause of action, we must "begin . . . our search for Congress's intent with the text and structure of [the statute at issue]. Sandoval, 532 at 288. As discussed above, Section 413 unambiguously states that

> the Retirement Home **shall** provide for the overall health care needs of residents in a high quality and cost-effective manner, including on site primary care, medical care, and a continuum of long-term care services. Secondary and tertiary hospital care for residents that is not available at a facility of the Retirement Home **shall**, to the extent available, be obtained . . . .

24 U.S.C. § 413(b) (emphasis added). It is evident by the text of the statute, and, indeed Defendants have conceded, that the Home is required to provide high-quality, on-site medical care. There is, in the text of the statute itself, a clear congressional expectation that the health care residents **shall** receive will be both high quality and cost-effective. Placed side by side and with equal weight in the statute, one of those requirements cannot overshadow the other in order to justify cutting medical care.

14

Dr. Dennis W. Jahnigen, Chairman of the Armed Force Retirement Home Board, testified before the Subcommittee on Labor, Health and Human Services, Education and Related Agencies of the House Appropriations Committee on May 6, 1997.  The Board Dr. Jahnigen chaired was created by Congress "to serve in an advisory capacity to the Director of the facility and to the Chief Operating Officer," in order to ensure that the Home met its mission.  24 U.S.C. § 416(b).  As the Chairman of that Board, Dr. Jahnigen was appointed by and served at the pleasure of the Secretary of Defense.  24 U.S.C. § 416(c)(2).  Speaking five years after the Armed Forces Retirement Home Act of 1991 was passed, he reiterated in his very opening words, Congress's intention that residents of the Home had a right to high quality care, saying:

> The mission of the Armed Forces Retirement Home (AFRH) remains unchanged – to provide a continuum of care and service in a retirement community for retired and former members of the Armed Forces, enabling them to live their remaining years among friends in an atmosphere of personal dignity; to provide the highest quality of residential, social, and health services to residents, emphasizing a holistic approach to each individual which stresses the excellence of these services in meeting the needs and expectations of the current and future residents . . .

Testimony of Dr. Dennis W. Jahnigen, Chairman Armed Forces Retirement Home Board before the Subcommittee on Labor, Health and Human Services, Education and Related Services of the House Appropriations Committee on June 11, 1997.  Indeed, Dr. Jahnigen testimony focused on the Home's goal "to constantly provide quality health care and services to its residents."  Id.

Congress plainly intended to provide former and retired members of the Armed Forces who satisfy the requirements for admission to the Home with the right to on-site, high quality medical services.  "Rights creating language can be characterized as language that explicitly confers a right directly on a class of persons that include the plaintiff, [including] language . . . that identify[ies] the class for whose especial benefit the statute was enacted."  Rolland v.

Romney, 318 F.3d 42, 53 (1st Cir. 2003) (a class of residents of nursing homes had a private cause of action under the Nursing Home Reform Amendments to the Medicaid law).

The AFRHA also provides no administrative remedy or other enforcement mechanism. In some cases in which Congress has otherwise enacted a comprehensive legislative scheme, including an integrated system of procedures for enforcement, a presumption is created that Congress deliberately did not create a private cause of action. See Tax Analysts, 214 F.3d at 186; Government of Guam v. Amer. Pres. Lines, 28 F.3d 142, 145-46 (D.C. Cir. 1994) (implication of a private right undercut by existence of administrative remedy). Here, no such complex enforcement scheme exists. Indeed, no other enforcement mechanism, administrative or otherwise, is provided. As such, failure to infer a private cause of action would render the statute toothless, leaving the residents with no recourse to ensure that the Home "shall" provide them the high-quality, on-site medical and dental services mandated by Congress. For these additional reasons, the Motion to Dismiss should be denied.

## II.    THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Alternatively, Defendants contend that they are entitled to summary judgment. Defendants' contention is based upon the flawed premise that 24 U.S.C. § 413 requires them to exercise discretion in balancing the tasks of (1) providing high quality health care and (2) providing health care in a cost-effective manner. Starting with this erroneous presumption, Defendants contend that the elimination of medical services at the Home was within their discretion in order to reduce costs and meet "the dual (and often competing) requirements of Congress; high quality, yet cost effective." (Def. Mot. pp. 11-12). Defendants assert that they are entitled to judgment as a matter of law because their conduct in balancing these competing instructions was rational and not arbitrary or capricious.

Defendants' position is flawed in a number of respects.  Initially, it relies upon a fundamental misinterpretation of the applicable statute.  The statute does not grant Defendants the discretion to balance between competing mandates.  The statute clearly and unambiguously requires Defendants to provide high quality health care.  Defendants' summary judgment argument is also flawed because Defendants cannot satisfy their burden to establish that there is no genuine issue of material fact in regard to whether the statutory requirements have been met. For these reasons, the motion for summary judgment should be denied.

### A.    APPLICABLE LEGAL STANDARD.

Summary judgment is appropriate only where there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law.  Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To support a motion for summary judgment, the moving party [has] the burden of showing the absence of a genuine issue as to any material fact, and, for these purposes, the material it lodges must be viewed in the light most favorable to the opposing party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In the present case, Defendants assert that, as a matter of law, Plaintiffs are not entitled to relief under 5 U.S.C. § 706(2)(A).  This section provides:

> The reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> * * *
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

17

Thus, Defendants bear the burden of establishing, as a matter of law, that their action (and inaction) in connection with their mandatory statutory duty to provide high-quality, on-site health care has not been arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. In considering this question, all factual inferences must be drawn in favor of Plaintiffs.

Unlike many cases involving judicial review under the APA, there is no established factual record in this case. Lawsuits challenging agency action or inaction often follow an administrative proceeding, such as a rulemaking or an internal review board ruling. In those contexts, the administrative law judge or panel has already made findings of fact, which are generally given deference upon appeal.[4] Thus, the applicable facts are already established for purposes of determining whether either side is entitled to judgment as a matter of law.

This case does not fit into such a framework. In the instant case, there have been no prior determinations, findings of fact, or reasons stated for the action in question. No proposed rules have been issued or final rules promulgated under the statute. There have been no administrative proceedings. Rather, there has been a unilateral determination by Mr. Cox to eliminate

---

[4]    The cases cited by Defendant in its motion for summary judgment arise in the context of challenges to agency action such as a decision from an administrative law judge or the procedures for a rulemaking. In Orfanos v. HHS, 896 F.Supp. 23 (D.D.C. 1995), the defendant appealed the amount of the penalty assessed by an administrative law judge under the Program Fraud Civil Remedies Act (31 U.S.C. § 3802 et seq.). Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506 (D.C. Cir. 1983) involves a challenge to whether the Environmental Protection Agency followed the proper rulemaking procedures. In Hondros v. Civil Service Comm'n, 720 F.2d 278 (3d Cir. 1983), the government appealed from the decision of the Civil Service Commission finding that the U.S. Marshall's service did not follow the regulations governing the hiring of civil service employees. In The Fund for Animals v. Babbitt, 903 F. Supp. 96 (D.D.C. 1995), the court reviewed the administrative record in connection with the denial of a citizen's petition involving a challenge to recovery plan issued under the Endangered Species Act.

longstanding medical services at the Home, the result of which is to deprive the residents at the Home of the services to which they are entitled by statute.

**B.    DEFENDANTS HAVE FAILED TO PROVIDE COMPETENT EVIDENCE TO SUPPORT THEIR MOTION.**

As a threshold matter, Defendants' Motion for Summary Judgment should be summarily denied because Defendants have failed to submit competent evidence to support a finding that Defendants have satisfied the statutory mandate and are entitled to judgment as a matter of law. Defendants' Motion is accompanied by a Statement of Undisputed Facts. This statement rests, however, solely upon the Declaration of Timothy Cox (the "Cox Declaration"), the Chief Operating Officer of the Home. The Cox Declaration is fundamentally flawed in that it does not satisfy the legal requirements to support a motion for summary judgment.

To be considered proper for purposes of a motion for summary judgment, an affidavit must be based on the affiant's personal knowledge.

> Supporting and opposing affidavits **shall be made on personal knowledge,** shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed. R. Civ. P. 56(f) (emphasis added). The "'requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented,' and a[n] affidavit based merely on information and belief is unacceptable." Judicial Watch, Inc. v. U.S Dept. of Com., 224 F.R.D. 261, 263 (D. D.C. 2004) (striking statements in a declaration submitted on a motion for summary judgment that were not made on personal knowledge).

The Cox Declaration is not competent evidence, because it is not based upon personal knowledge. Mr. Cox states only "that the following statements are true and correct to the best of my knowledge." (Cox Declaration, p. 1). Nor does the Cox Declaration, by its content, provide