UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARTIN CODY et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Civil Action No. 05-1041 (RJL) |
| | ) |
| **THE HONORABLE DONALD RUMSFELD** | ) |
| **Secretary of Defense et. al.** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT**

Defendants file this Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment.

Defendants request this Court grant their motion to dismiss Plaintiffs' complaint for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6). In the alternative, Defendants move for Summary Judgment under Fed. R. Civ. P. 56. There is no genuine issue of material fact regarding the level of medical and dental care provided to residents at the Home. As such, presuming Plaintiffs' allegations are true, and allowing them all favorable inferences therefrom, Plaintiffs still cannot prevail. Plaintiffs' arguments against Defendants' motion to dismiss or in the alternative, for summary judgement are without merit.

Plaintiffs fail to state a claim upon which relief may be granted because the statute allegedly violated provides no judicially manageable standards against which to judge the agency's actions. 24 U.S.C. § 413 requires the Home to provide "high quality" health care in a "cost-effective" manner. The statute provides no basis for judging the application of these two

competing requirements. Alternatively, defendant is entitled to Summary Judgment because the agency's decisions regarding health care are not arbitrary and capricious.

I. **The Defendants' Declaration Is Made By a Competent Declarant, With Personal Knowledge, Pursuant To Rule 56(e) of the Federal Rules of Civil Procedure.**

Plaintiffs assert that according to Rule 56(e) of the Federal Rules of Civil Procedure, the declaration of Mr. Timothy Cox, submitted to support the motion to dismiss or in the alternative for summary judgment, is not competent evidence due to a lack personal knowledge. (Pl. Resp. p. 19-20). Plaintiffs' incorrectly argue that because Mr. Cox stated "that the following statements are true and correct to the best of my knowledge," that the evidence presented in the declaration is not based upon personal knowledge. (Pl. Resp. p. 19). Plaintiffs rely on Judicial Watch, Inc. v. U.S. Dept. of Com., 224 F.R.D. 261 (D.D.C. 2004), in support of their argument that Mr. Cox's declaration is not based on personal knowledge. However, Judicial Watch is distinguishable. Judicial Watch involved a witness who based her statements on the handwritten notes of another person. Id. at 264. Mr. Cox's declaration is not based on the notes of another. His declaration is based on the knowledge that he has gained as the head of the agency, responsible for the overall operation and administration of the Armed Forces Retirement Home (AFRH). See Def. Exh. A ¶ 1. Further, the decisions that Mr. Cox made as Chief Operating Officer of the AFRH, the rationale for which he testifies in his declaration, are the very things which give rise to Plaintiffs' complaint against Mr. Cox. Finally, the testimony provided in Mr. Cox's declaration regarding changes at the AFRH are also included in Plaintiffs' exhibits to its Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. See AFRH Chief Operating Officer Fact Sheet No. 8 and No. 10. Mr. Cox's declaration is based on the personal knowledge he has acquired over the past three years of being the Chief Operating

Officer of the AFRH. In order to eliminate any doubt as to the basis of Mr. Cox's testimony, Defendants attach an amended declaration from Mr. Cox which clearly states that the matters to which he testifies are based on personal knowledge.

II. **There Is No Justiciable Standard Against Which to Judge the Agency's Discretion.**

The Home must provide for the overall health care needs of residents in a high quality and cost effective manner, including on site primary care, medical care, and a continuum of long-term care services. 24 U.S.C. § 413(b). The statute provides no guidance in determining how to allocate resources between the two competing interests. Congress anticipated changes from time to time in the level and type of health care provided, and required the Home to report on the quality and access to health care for residents and any changes to the level of care provided. S. Rep. No. 109-69, at sec. 422 (2005). The Director of the Home has discretion to make changes that he deems appropriate, provided he notifies Congress in the Home's annual report. It is in this way that Congress provides oversight of the Retirement Home.

No judicially manageable standard exists where the "statutory standard is expressed in such general concepts that it requires and must contemplate the exercise of discretion in choice among various rational alternatives none of which can fully satisfy all demands of competing interests." Congress of Railway Unions v. Hodgson, 326 F. Supp. 68 (D.D.C. 1971). This is not a case of interpreting statutory language, but rather a case of balancing competing goals. This case involves determinations of how to allocate resources without any statutory guidance from Congress. By not speaking specifically on the issue of what constitutes high quality health care and how to balance the competing statutory obligations, Congress has left this area up to agency discretion. A case such as this, where there is a difference in judgment between residents and

the Home over a the merits of particular administrative action as a means of achieving a legislative objective, when Congress has assigned authority to make and act upon such determinations to the agency, is not judicially reviewable. *Id.* at 73.

<u>Estate of Smith v. Heckler</u>, 747 F.2d 583 (10th Cir. 1984) cited by plaintiff's is readily distinguishable from this case and of no assistance to Plaintiffs. The 10th Circuit in <u>Smith</u> was not called upon to second guess an agency's determination of what was "high quality" care. Rather the Court held that the Medicaid Statute in question required the Secretary of Health and Human Services to conduct an inspection to ensure that facilities met standards of care spelled out in the statute. The Court in <u>Smith</u>, noted that the Plaintiffs did not challenge the substantive medical standards but rather the enforcement mechanism established by the Secretary. <u>Smith v. Heckler</u>, 747 at 588. The Medicaid Act, 42 U.S.C. §§1396-1396n, could not be more different from 42 U.S.C. § 413. In contrast to the general guidelines contained in 42 U.S.C. § 413, the Medicaid Act is a detailed statutory scheme providing numerous specific standards.

Reductions or changes in particular aspects of the health care provided to residents do not establish a diminution of the overall level of care. As in any case involving the allocation of resources, reductions in one area must be weighed against increases made in other areas. In this way 42 U.S.C. § 413 is most closely analogous to lump sum appropriation statutes held un-reviewable in <u>Lincoln v. Vigil</u>, 508 U.S. 182 (1993). Further, there is nothing in 24 U.S.C. § 413 which makes the previous level of care a standard the Home must achieve. Even if plaintiffs could prove a reduction in overall care, they would still fail to state a claim for which relief may be granted.

Plaintiffs cannot argue that the Home fails to provide medical care or fails to provide on-

site primary care. Plaintiffs' own submissions show that the Home meets these statutory requirements. Plaintiffs are left arguing about the AFRH's interpretation of "high quality." The term "high quality," without more does not provide the Court with a meaningful standard by which to judge the Home's actions, especially given the statutory requirement to balance cost effectiveness. Because 24 U.S.C. § 413 provides no justiciable standard, the Plaintiffs' claim should be dismissed for failure to state a claim upon which relief can be granted.

**IV.    24 U.S.C. § 413 Does Not Create a Private Cause of Acton Because the Statutory Language Does Not Display an Intent to Create a Private Right or a Private Remedy**

A court determining whether a statute creates a private right of action, has a straightforward task to "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy," for "private rights of action to enforce federal law must be created by Congress." APCC Servs. v. Sprint Communs. Co., 418 F.3d 1238, 1245 (D.C. Cir. 2005), quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001). 24 U.S.C. § 413 does not display such an intent. . 24 U.S.C. 413 is directed at the AFRH, stating "the Retirement Home shall provide ..." rather than focusing on what the residents are entitled to. "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). 24 U.S.C. § 413 is phrased as a directive to a federal agency which gives far less reason to infer a private remedy. Alexander v. Sandoval, 532 U.S. 275, 289 (2001). Even if 24 U.S.C. § 413 could be read as right creating a plaintiff suing under an implied right of action still must show that the statute manifests an intent "to create not just a private right but also a private remedy." Gonzaga Univ. v. Doe, 536

U.S. 273, 284 (U.S. 2002); quoting <u>Alexander v. Sandoval,</u> 532 U.S. 275, 286 (2001).  Nothing in 24 U.S.C. § 413 even hints at a private remedy.

**III.  Plaintiffs Complaints Amount to Inconveniences Rather Than a lack Quality of Health Care.  As Such, Plaintiffs' Complaints Do Not Raise a Genuine Issue Of Material Fact.  Therefore, the Court Should Grant Defendants' Motion**.

Plaintiffs' complaints about the quality of health care services at the Home amount to nothing more than inconveniences and a resistance to change.  24 U.S.C. § 413 mandates that the Home provide residents with high quality health care.  The Home gladly and dutifully accepts this responsibility.  The Home meets and often exceeds the standard of care.  However, in order to satisfy the competing obligations of providing high quality care in a cost effective manner, the Home was forced to make changes in order to survive.  See Def. Exh. A, ¶ 5.  It is these changes that form the basis of Plaintiffs' complaint.

Plaintiffs' complaint can be broken down into five areas: (1) nurse vice physician in the Community Health Clinic after hours and on weekends; (2) changes to the pharmaceutical procedures; (3) x-ray services; (4) transportation services; and, (5) dental services.

Community Health Clinic / Treatment Room: Plaintiffs complain of changes in procedures in the Treatment Room.  Since 2003, the Community Health Clinic has been staffed by a physician during the day and by a registered nurse at night and weekends.  Def. Exh. A, ¶ 6(c).  At all times a physician is on call.  <u>Id</u>.  Plaintiffs allege that the benefit of having a physician in the Treatment Room 24 hours a day was that if a resident had an emergency in the night, the physician could come to the resident's room.  Pl. Resp., p. 22.  Under the current model, a registered nurse is available to come to the resident's room in an emergency and provide treatment.  The agency has determined that the nurse is just as able to assess the

resident, treat the resident, or call 911. Def. Exh. A, ¶ 6(c). The advantage of having a doctor respond to an after hours emergency is small or non-existent but the cost of a physician on call 24 hours a day is significant and the money an be better spent elsewhere. Def. Exh. A, ¶ 6(c). Plaintiff's disagree but this does not make the agency determination irrational.

Pharmaceutical Procedures: Plaintiffs fail to show how elimination of the on-site pharmacy equates to a lower quality of health care for the residents of the Home. Plaintiffs are not alleging that they are not receiving medications that have been prescribed. Plaintiffs simply complain that it takes longer to get these medications. That is an issue of convenience, not an issue of quality of health care. Nor is there anything in 24 U.S.C. § 413, that suggests that a full-time pharmacy is "primary care" required to be provided on-site.

X-ray Services: Plaintiffs argue that x-ray services are not provided at the Home. Plaintiffs rely on one resident's statement of an incident in which he allegedly did not receive an x-ray on site. Pl. Resp., p. 25; Hill Decl. The Cox declaration is clear. Def. Exh. A, ¶ 6(f). X-ray services are provided by a contract vendor who comes to the resident's room for the x-ray. Id. The fact that a resident had to go to Walter Reed Army Medical Center for an x-ray does not establish that the quality of care is not high. Nothing in the statute says that the Home must provide x-rays in order to satisfy the requirement to provide high quality medical care or that x-ray services are "primary care," required to be performed on-site. X-rays were not provided at all for approximately two years. Id. X-rays were eliminated because the equipment was old and dangerous, not because of changes implemented by the Home's director. Id. Savings in other areas have allowed the Home to resume x-ray services through a contract vendor. There is no evidence presented to show that the new method of providing x-ray services resulted in a drop in

the quality of care provided.

Transportation Services:  Plaintiffs complain that the Home does not provide after hours transportation to residents who need primary medical care that is not provided at the Home.  The AFRH Chief Operating Officer Fact Sheet No. 10, which is attached as an exhibit to Plaintiffs' reply, clearly states the policy of the Home, which is to provide transportation for medical care after hours and on weekends and holidays.  <u>See</u> also Def. Exh. A, ¶ 6(d).

Dental Services:  Plaintiffs dispute that the AFRH provides on-site routine and emergency dental care.  Plaintiffs base their assertion on a resident's statement that the Home's dentist refused to extract a tooth. Even if this information is true, it does not establish that the dental care provided to residents is not high quality.  As Mr. Cox stated in his declaration, "More extensive dental needs are handled by referrals." Def. Exh. A, ¶ 6(a).  Plaintiffs have presented no evidence to show that the dental care provided to residents is not high quality.

Finally, the Defendants' declaration establishes that there is no genuine issue of material fact, and even if the court considers plaintiffs' declarations as true, plaintiffs have failed to introduce any facts that counter the evidence submitted by the Defendants.  The Cox declaration addresses all of the medical services that are provided to the residents of the AFRH.  While Plaintiffs seek to present evidence of isolated incidents of residents' complaints about the quality of care received, those isolated incidents do not establish that the residents are not being provided high quality health care.  Further, the isolated incidents depicted in Plaintiffs declarations are insufficient to show that the Cox declaration is inaccurate in regard to health care measures implemented at the Retirement Home.  Plaintiffs' declarations, if true, merely suggest isolated occurrences.  Plaintiffs present no evidence to dispute the policies in place at

the AFRH with regard to health care that Mr. Cox describes in his declaration, and thus, no evidence that the measures in place result in anything but high quality health care.

As stated above, Plaintiffs are provided with high quality health care in accordance with the Home's statutory obligations. Plaintiffs' complaints do not establish a violation of the Home's statutory duty. Plaintiffs' complaints amount to inconveniences. Plaintiffs admit this in their reply: "the constant referrals to Walter Reed for services that should be provided at the Home are an inconvenience to the residents." Thus, Plaintiffs' claims amount to a desire to have more convenient health services, not necessarily higher quality health services.

In complaining about the lack of on-site services, Plaintiffs fail to show that the services they receive, whether on site or otherwise, are not high quality. Congress certainly did not mandate that all health care services be provided on site. In fact, Congress envisioned health care would be provided off site. "Secondary and tertiary hospital care for residents that is not available at a facility of the Retirement Home shall, to the extent available, be obtained by agreement with the Secretary of Veterans Affairs or the Secretary of Defense in a facility administered by such Secretary." 24 U.S.C. § 413(b). Further, Congress has prohibited the Retirement Home from constructing an acute care facility. Id. The Retirement Home has an obligation to provide for the overall health care needs of the residents in a high quality manner. Not all of residents' health care needs are required by Congress to be provided for on site. Congress anticipated and authorized use of government health care facilities, such as the Veterans Affairs hospitals and Walter Reed Army Medical Center, to meet the overall health care needs of residents in a high quality manner. Congress said nothing about convenience.

If material facts are genuinely in issue or, though undisputed, are susceptible to divergent

inferences bearing upon an issue critical to disposition of the case, summary judgment is not available.  But if, on the other hand, neither of these two scenarios is present, a motion for summary judgment adequately underpinned is not defeated simply by a bare opinion or an unaided claim that a factual controversy persists.  <u>Alyeska Pipeline Service Co. v. U.S. EPA</u>, 856 F.2d 309 (D.C. Cir., 1988).  Plaintiffs' evidence of isolated incidents where residents have been inconvenienced by the changes in health care services at the Home do not raise a material issue of disputed fact.  Therefore, this case is appropriate for summary judgment.

## IV.     **<u>Defendants' Actions Were Not Arbitrary and Capricious.</u>**

The Cox declaration establishes that the Home provides high quality health care to its residents.  Def. Exh. A.  Mr. Cox has had to deal with the competing statutory obligations of providing high quality care in a cost effective manner.  24 U.S.C. § 413.  The Home had experienced an extended period of declining revenues and increasing operating costs.  Def. Exh. A, ¶ 5.  Mr. Cox led an effort to streamline the operation of the Home to meet its dual purpose of providing high quality health care in an efficient and cost effective manner.  In many ways, the changes that Mr. Cox implemented increased the quality of care.  For example, residents are seen by a physician rather than a physician's assistant.  Def. Exh. A, ¶ 6.  Residents have access to a new state of the art dental facility that allows for dental x-rays to be taken and read on site.  Def. Exh. A, ¶ 6.  Also, despite Plaintiffs' claims, the Home provides transportation for medical visits outside the Home and pharmaceuticals.  Def. Exh. A, ¶ 6.

To the extent that changes in health care have been implemented at the Home, the changes have largely improved the quality of care.  The Director had a rational basis for all changes that have been implemented.  His actions have succeeded in meeting the dual (and often

competing) requirements of Congress; high quality, yet cost effective.

V.     **The Court Should Deny Plaintiffs' Request for Discovery.**

None of the evidence cited by Plaintiffs is relevant to the issue of this case: whether the Retirement Home provides for the overall health care of its residents in a high quality and cost effective manner. This is a standard to be applied across the board, applicable to all residents, not whether there may be one or two isolated incidents in which a resident may not have received proper care. Those isolated incidents may be better suited for a tort claim. Plaintiffs fail to show that any of the incidents cited were a result of the Retirement Home's changes in its health care model such as the Community Health Clinic, pharmaceuticals, transportation services, x-ray services, or dental care. As such, discovery would not lead to any information relevant to the issue in this case.

For the foregoing reasons and those stated in our Motion to Dismiss or in the Alternative for Summary Judgment, Defendants respectfully requests that this Court dismiss plaintiff's amended complaint with prejudice.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.

                                        Washington, D.C.  20530
                                        (202) 353-9895

Of Counsel:

Major Patrick L. Gary
Litigation Attorney
U.S. Army Litigation Division
901 N. Stuart Street
Arlington, VA 22203