# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 12, 2007          Decided December 14, 2007

No. 06-5253

MARTIN CODY, ET AL.,
APPELLANTS

v.

TIMOTHY C. COX,
CHIEF OPERATING OFFICER, ARMED FORCES RETIREMENT
HOME, AND
ROBERT M. GATES, SECRETARY OF DEFENSE,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01041)

———

*David H. Bamberger* argued the cause for appellants. With him on the briefs was *J. David Folds*.

*Brian C. Baldrate*, Special Assistant United States Attorney, argued the cause for appellees. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Steven M. Ranieri*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, *Chief Judge*, and SENTELLE and BROWN, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* BROWN.

Concurring opinion filed by *Chief Judge* GINSBURG.

BROWN, *Circuit Judge*: Plaintiffs are elderly veterans who seek to force the Armed Forces Retirement Home to provide "high quality" health care, as required by 24 U.S.C. § 413(b). The district court dismissed their case as moot, relying on new amendments to section 413. We reverse and hold the case is not moot and subsection 413(b) is not committed to agency discretion by law.

I

The Armed Forces Retirement Home-Washington D.C. ("Home"), provides full-time housing and medical care for approximately 1,000 elderly veterans. In 2003, the Chief Operating Officer of the Home ("COO") introduced a series of cost-saving measures that plaintiffs, a group of full-time residents at the Home, claim led to a severe decrease in the quality of medical care. The alleged deficiencies include unavailability of physicians and dentists, neglect of patients, and delays in obtaining prescription drugs.

In 2005, plaintiffs sued the COO and the Secretary of Defense ("defendants"), requesting an injunction to force defendants to provide "high quality" health care as required by 24 U.S.C. § 413(b). They asked the district court to mandate the Home to: maintain "a primary treatment room, staffed by an on-location physician, to provide primary health care to residents of the Home seven days a week, twenty-four hours a day"; maintain "the ability to provide promptly the medications required for the treatment of residents"; maintain "the ability to

2

3

provide on-site x-ray services, electrocargiogram [sic] services, laboratory work, and such other services as are required to provide for the primary health care needs of the residents"; provide "annual examinations for each resident to assess their overall physical and mental condition"; and provide "adequate resources (such as transportation)." Their requested relief was not "limited to" these remedies and they also asked the court to "[a]ward such other and further relief, including costs and attorneys' fees, as the Court may deem just and proper."

In 2006, Congress amended section 413, mandating specific measures regarding physicians, dentists, and transportation, and requiring the COO to issue uniform standards to ensure access to care. The district court found that these amendments rendered plaintiffs' claims moot and granted defendants' motion to dismiss the case. *See Cody v. Rumsfeld*, 450 F. Supp. 2d 5, 9-11 (D.D.C. 2006). Plaintiffs now appeal.

II

The mootness doctrine ensures that federal courts only decide ongoing cases and controversies. *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc). For a case to become moot, it must be "impossible for the court to grant 'any effectual relief whatever.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

When plaintiffs filed their complaint, subsection 413(a) provided that a resident at the Home "shall receive the services authorized by the Chief Operating Officer." 24 U.S.C. § 413(a) (Supp. I 2001)). Subsection (b) was the only limitation on the COO's discretion and mandated that the Home "shall provide for the overall *health care needs* of residents in a *high quality*

4

*and cost-effective manner*, including on site primary care, medical care, and a continuum of long-term care services." § 413(b) (emphasis added).

In January 2006, Congress amended section 413 by adding more specific requirements. *See* National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, § 909(a), 119 Stat. 3136, 3404-05. While leaving subsection (b) substantially intact, the amendments inserted subsections (c) and (d) as additional limitations on the COO's discretion under subsection (a). Under subsection (c), the Home must "have a physician and a dentist- (A) available at the facility during the daily business hours of the facility; and (B) available on an on-call basis at other times," and those professionals must "have the skills and experience suited to residents of the facility." Under subsection (d), the Home must "provide daily scheduled transportation to nearby medical facilities used by residents of the facility," and "may provide, based on a determination of medical need, unscheduled transportation for a resident of the facility to any medical facility located not more than 30 miles from the facility for the provision of necessary and urgent medical care for the resident." Finally, under subsection (c)(3), "the Chief Operating Officer, in consultation with the Medical Director, shall establish uniform standards, appropriate to the medical needs of the residents, for access to health care services during and after the daily business hours of the facility."

The district court held that the newly enacted subsections rendered plaintiffs' complaint moot. In essence, the court concluded that by adding these new subsections, Congress made subsection (b)'s requirement that the Home provide "high quality and cost-effective" health care a mere redundancy.

5

Yet, "the normal assumption is that where Congress amends only one section of a law, leaving another untouched, the two were designed to function as parts of an integrated whole." *Markham v. Cabell*, 326 U.S. 404, 411 (1945). Under the newly amended subsection (a), the COO's discretion is limited by "subsections (b), (c), and (d)." This demonstrates subsection (b)'s "high quality" mandate has force beyond subsections (c) and (d). Accordingly, we hold section 413 functions as an "integrated whole," with subsections (c) and (d) serving as a baseline that does not exhaust subsection (b)'s "high quality and cost-effective" health care mandate. The district court could have provided meaningful relief under subsection (b), notwithstanding the new subsections.[1]

Under the district court's interpretation, the COO could decide to provide no physical examinations for residents simply because examinations are not specified in subsections (c) and (d). Similarly, on this reading, the COO could decide to hire just one physician for 1,000 elderly residents because subsection (c) only requires that "a physician" be "available." Conversely, under our interpretation, the COO could provide no examinations and only one physician only if doing so would satisfy subsection (b)'s "high quality and cost-effective" health care mandate. While the requirements of subsections (c) and (d) inform this "high quality and cost-effective" inquiry, they do not completely exhaust its scope.

---

[1] While its wording was unclear, the district court did not decide whether the Home complied with the newly enacted subsections (c) and (d). *See Cody*, 450 F. Supp. 2d at 10 n.2. This was the proper course, since plaintiffs had not alleged violations of these new subsections. On remand, plaintiffs may choose to amend their complaint to reflect these changes. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

6

We conclude plaintiffs' complaint is not moot, either for the subjects mentioned by subsections (c) and (d), like physicians and transportation, or for those not specifically addressed by those subsections, like physical examinations and medical supplies.[2]

III

Defendants claim subsection (b)'s "high quality and cost-effective" health care requirement is exempted from judicial review under the Administrative Procedure Act because the COO's decision is "committed to agency discretion by law"

---

[2] The district court found plaintiffs' requests for examinations, medical supplies, and transportation were premature because the COO had not issued "uniform standards" under subsection 413(c)(3) or exercised his discretion under subsection (d)(1). *Cody*, 450 F. Supp. 2d at 9-10 ("For this Court to order the relief requested prior to those standards being set would supplant the power" Congress gave to the COO). The Chief Judge's concurrence seems to adopt the district court's notion that the COO must, apart from providing care, "promulgate" more "specific" standards. Concurring op. at 2. Yet, as defendants' counsel explained at oral argument: "[The COO is] issuing standards all the time and that's what a Chief Operation Officer does. When he establishes a new bus schedule, when he sets up x-ray services or contracts out a doctor, that's what he does . . . ." This shows the COO, in "establish[ing] uniform standards" and exercising his discretion, is not contemplating a more formal process than continuing to provide care at the Home, and no party has suggested this approach is inconsistent with subsections 413(c)(3) and (d)(1). Accordingly, the district court's concern that its involvement in this dispute would be premature was unfounded.

7

under 5 U.S.C. § 701(a)(2).[3]  To prevail, defendants must rebut the presumption that agency action is judicially reviewable by showing "the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'"  *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).  Defendants have failed to satisfy this burden.

First, section 413 does not fall into one of the narrow categories that usually satisfies the strictures of subsection 701(a)(2).  *See Lincoln*, 508 U.S. at 191-92.  This case does not involve "second-guessing executive branch decision[s] involving complicated foreign policy matters."  *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).  Nor does it relate to an agency's refusal to undertake an enforcement action, *Heckler*, 470 U.S. at  831, or its determination about how to spend a lump-sum appropriation, *Lincoln*, 508 U.S. at 192.

Second, while subsection 413(a) gives the COO broad discretion in administering care, it qualifies that discretion with the phrase: "[e]xcept as provided in subsection (b), (c), and (d)."  Plainly, Congress intended subsection (b)'s "high quality and cost-effective" standard to limit the COO's discretion under subsection (a).  Although "high quality and cost-effective" health care is a tricky standard for a court to apply, that difficultly is not unique to this statute.  For example, in determining whether doctors are immune from suit while taking part in professional review activities, courts and juries must decide,

---

[3] We may consider this argument even though defendants did not cross-appeal because they are only seeking to support the district court's judgment on an alternative ground.  *See United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924).

7

8

under an objective standard, whether the doctors acted with "reasonable belief" that their actions were "in furtherance of quality health care." 42 U.S.C. § 11112(a)(1); *see also Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 635 (3d Cir. 1996). Furthermore, 5 U.S.C. § 701(a)(2) provides a "very narrow exception" that applies only in "rare instances." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). The difficulty of defining the boundaries of "high quality and cost-effective" health care is insufficient to make subsection (b) one of those rare instances.

We have regularly found Congress has not committed decisions to agency discretion under far more permissive and indeterminate language. For example, in *Dickson v. Secretary of Defense*, 68 F.3d 1396 (D.C. Cir. 1995), we found judicial review was available for abuse of discretion when the statute stated that a board "may excuse a failure to file [a request to correct an error in a military record] within three years after discovery if it finds it to be in the interest of justice." *Id.* at 1399-1404. If language that a board "may" take an action if it "finds it to be in the interest of justice" provides a "meaningful standard against which to judge the agency's exercise of discretion," *Lincoln*, 508 U.S. at 191, surely wording mandating that the COO "shall" provide "high quality and cost-effective" health care does so as well.

IV

We conclude plaintiffs' allegations under subsection (b) are neither moot nor "committed to agency discretion by law." We therefore *reverse* the judgement of the district court and *remand* the case for further proceedings.

*So ordered.*

8

GINSBURG, *Chief Judge*, concurring: I write separately only because I do not agree with the Court's reason for holding the issues in this case are ripe for decision. I do not disagree with the Court's conclusion.

The district court read the amendment of 24 U.S.C. § 413 largely to supplant the mandate of § 413(b) that the Home provide "high quality and cost-effective" health care. For example, because § 413(c)(1)(A) provides "the Retirement Home shall have a physician and a dentist ... available at the facility during the daily business hours of the facility," the district court concluded that the statute did not oblige the Home to have a physician on site overnight and therefore that the amendment mooted the plaintiffs' prayer for that relief. *See* Ct. Op. at 4-5. The district court also held the amendment made unripe all the plaintiffs' claims it did not moot. 450 F. Supp. 2d at 9-10. Apparently reading the amendment to make § 413(b) applicable only when the COO provides care pursuant to § 413(c)(3), the court noted the COO had not yet issued standards. *See, e.g., id.* at 9 ("[T]he standards controlling ... access to medication ... are yet to be established under [§ 413(c)(3)] by [the] COO. ... Accordingly, this relief requested by plaintiffs is being sought prematurely ...."). The court was troubled also that the COO was yet to exercise his discretion pursuant to § 413(d). *Id.*

The Court seizes upon Government counsel's statement at oral argument that the COO is "issuing standards all the time," as though that addressed the district court's concern with ripeness. Ct. Op. at 6 n.2. The Court infers counsel's position was that § 413(c)(3) does not require "a more formal process than continuing to provide care at the Home." *Id.* That is not, however, the position of the Government, the brief of which adopted the view of the district court: "Since [the COO] has yet to establish ... standards, the District Court properly held" the case was unripe. The plaintiffs, too, view § 413(c)(3) as requiring the COO to do more than provide care: "[I]t has now

2

been seventeen months since the statute was amended to require the COO to issue the standards, but they still have not been issued." It is hardly surprising, therefore, that "no party has suggested [the Court's] approach is inconsistent with" the statute. Ct. Op. at 6 n.2.

In context, moreover, I think it clear counsel was not addressing the scope of § 413(c)(3) and did not represent that the COO had promulgated "standards." He discussed neither the text nor the purpose of the amendment. Nor did he explain why reading the statute as the Court now does would not render § 413(c)(3) a nullity. Furthermore, counsel's examples of "standards" were just instances of the Home providing care. ("[The COO is] issuing standards all the time .... When he establishes a new bus schedule, when he sets up x-ray services or contracts out a doctor, that's what he does.")

Considering that the Court has an obligation independently to determine whether the district court had jurisdiction, we should not strain to interpret counsel's *ex tempore* remark at oral argument as establishing a fact for which there is no record support and which contravenes the same party's written submission. Even as the Court interprets counsel's statement, moreover, that statement does not address the district court's concern that the COO had yet to exercise his discretion regarding the provision of transportation pursuant to § 413(d)(1).

In my view, it is nonetheless clear, quite apart from counsel's statement, this case is ripe. The plaintiffs complain that the Home does not provide care consistent with the standard set out in § 413(b) ("high quality and cost-effective" health care), not that the COO has violated his obligations to promulgate more specific standards pursuant to § 413(c)(3) and to provide for the transportation of residents pursuant to §

3

413(d)(1). Whatever the role of those provisions, they do not displace the mandate of § 413(b). For instance, the plaintiffs assert that § 413(b) requires the COO to provide x-ray services on-site, as the Home used to do. The COO already has decided to eliminate this service, although he did so through an informal adjudication rather than by promulgating a "standard" under § 413(c)(3). That decision and others like it have allegedly injured the plaintiffs and given rise to a live controversy over the question whether the Home is providing the "high quality and cost-effective" health care required of it by § 413(b).