## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>MARTIN CODY, *et al.*　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　　Plaintiffs,　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　v.　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>ROBERT M. GATES,　　　　　　　　)<br>Secretary of Defense, *et al.*,　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　　Defendants.　　　　　　　)<br>_____ ) | Civil Action No. 1:05-cv-01041 (RJL) |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

_____
　　　　　　　/s/
David H. Bamberger (D.C. Bar No. 362285)
J. David Folds (D.C. Bar No. 449791)
Syma Mirza (D.C. Bar No. 978858)
DLA PIPER US LLP
500 8th Street, N.W.
Washington, D.C.  20004
Tel:    (202) 799-4500
Fax:    (202) 799-5500

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

FACTUAL BACKGROUND ................................................................................................ 2

I.    DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN UNDER THE
      STANDARD FOR SUMMARY JUDGMENT.........................................................10

      A.    Applicable Legal Standard ................................................................... 10

      B.    Defendants Have Failed to Meet Their Burden With Respect to the
            Administrative Procedures Act. ............................................................10

            1.    This Case Does Not Involve Judicial Review of Agency
                  Proceedings.........................................................................11

            2.    Defendants' Purported "Administrative Record" Is A Sham......12

            3.    Defendants Have Failed To Establish That Their Actions Are "In
                  Accordance With Law"..........................................................13

                  a.    Defendants Must Comply with the Plain Language of the
                        Statute in Order for Their Actions to be in Accordance with
                        Law..........................................................................15

            4.    Summary Judgment Would Not Be Warranted Even If An
                  Arbitrary And Capricious Standard Were Applicable...............16

      C.    Defendants Have Failed to Meet Their Burden With Respect to the
            Mandamus Act.................................................................................. 18

      D.    Defendants Have Failed To Meet Their Burden With Respect To A
            Private Right Of Action Under 24 U.S.C § 413 ................................... 22

II.   PLAINTIFFS ARE ENTITLED TO DISCOVERY UNDER RULE 56(f)........26

CONCLUSION ............................................................................................................. 29

WASH1\4976358.4

# TABLE OF AUTHORITIES

**Page**

## CASES

*13th Regional Corp. v. Dep't of Interior*, 654 F.2d 758 (D.C. Cir. 1980) .................................. 20

*ACEMLA v. Copyright Royalty Tribunal*, 763 F.2d 101 (2nd Cir. 1985) .................................. 14

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ....................................................... 10

*Am. Cetacean Soc'y v. Baldrige*, 640 F. Supp. 1398 (D.C. Cir. 1985) ........................................ 18

*Alexander v. Sandoval*, 532 U.S. 275 (2001)......................................................... 22

*Anselmo v. King*, 902 F. Supp. 273 (D.D.C. 1995) ..................................................... 18

*Beatty v. Wash. Metro. Area Transit Authority*, 860 F.2d 1117 (D.C. Cir. 1988) ...................... 19

*Berkeley v. Home Ins. Co.*, 68 F.3d 1409(D.C. Cir. 1995)......................................... 26

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Soiux Tribes of the Fort Peck Reservation*, 323 F.3d 767 (9th Cir. 2003) ............................................................. 26

*Burlington Truck Lines, Inc. v. United States*, 371  U.S. 156 (1962)...................................  16

*Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564 (10th Cir. 1981) .........................................................................19, 20

*Chamber of Commerce  v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996).......................................18, 19

*Citizens for a Better Env't v. EPA*, 596 F.2d 720 (7th Cir. 1979)....................................... 14

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)............................................ 12

*Cody v. Cox*, 509 F.3d 606 (D.C. Cir. 2007) ....................................................... 15

*Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1 (D.C. Cir. 1988)............... 13

*Cort v. Ash*, 422 U.S. 66 (1975)................................................................. 22

*Diamond v. Atwood*, 43 F.3d 1538 (D.C. Cir. 1995).................................................. 10

*Dickson v. Sec'y of Def.*, 68 F.3d 1396 (D.D.C. 1995) ............................................. 17

*Doyle v. England*, 192 F. Supp. 202(D.D.C. 2005................................................... 11

WASH1\4976358.4

# TABLE OF AUTHORITIES
(continued)

**Page**

*Envtl Def. Fund, Inc. v. Costle*, 657 F.2d 275  (D.C. Cir. 1981) ................................................. 11

*Estate of Smith v. Heckler*, 747 F.2d 583 (10th Cir. 1994)........................................................ 20

*Ethyl Corp. v. EPA*, 306 F.3d 1144 (D.C. Cir. 2002).................................................................. 14

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ....................................................... 13

*Fund for Animals v. Babbitt*, 903 F. Supp. 96 (D.D.C. 1995) ...................................................... 11

*Government of Guam v. Am. Preservation Lines*, 28 F.3d 142 (D.C. Cir. 1994)......................... 25

*Hubbard v. EPA*, 949 F.2d 453 (D. C. Cir. 1991)........................................................................ 18

 *Home Health, Inc. v. Shalala*, 188 F.3d 1043 (8th Cir. 1999)...............................................14, 15

*Jackson v. Kelly*, 557 F.2d 735 (10th Cir. 1977)........................................................................ 19

*Japan Whaling Assoc. v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986)........................................... 18

*Maguire v. Heckler*, 1983 U.S. Dist. LEXIS 16882 (S.D.N.Y. 1983) ........................................ 20

*McNutt v. Hills*, 426 F. Supp. 990 (D.D.C. 1977)....................................................................... 19

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................................................16, 17

*Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167 (10th Cir. 1997)......................................... 16

*Richards v. INS*, 554 F.2d 1173 (D.C. Cir. 1977) ...................................................................... 12

*Rodway v. U.S. Dep't of Agric.*, 514 F.2d 809 (D.C. Cir. 1975) ................................................. 13

*Robert E. Derecktor of Rhode Island, Inc. v. Goldschmidt*, 506 F. Supp. 1059 (D.R.I.
1980) ....................................................................................................................................... 13

*Rolland v. Romney*, 318 F.3d 42 (1st Cir. 2003)......................................................................... 25

*Sarasota Mem'l Hosp. v. Shalala*, 60 F.3d 1507 (11th Cir. 1995)............................................. 16

*Swan v. Clinton*, 100 F.3d 973 (D. C. Cir. 1996)........................................................................ 19

*Tax Analysts v. IRS*, 214 F.3d 179 (D.C. Cir. 2000) ..............................................................22, 25

# TABLE OF AUTHORITIES
(continued)

**Page**

*Thompson v. Thompson*, 484 U.S. 174 (1988)..........................................................................23

*Wash. Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897 (D.C. Cir. 1996)..........18

*Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915 (5th Cir. 1992)..........................26

*Williams v. Wash. Metro. Area Transit Comm'n*, 415 F.2d 922 (D.C. Cir. 1968) .....................15

## STATUTES

5 U.S.C. § 702 .............................................................................................................................18

5 U.S.C. § 706 .......................................................................................................................13, 14

24 U.S.C. § 411 ...........................................................................................................................23

24 U.S.C. § 412 .....................................................................................................................21, 23

24 U.S.C. § 413 ......................................................................................................................*passim*

24 U.S.C. § 415 ...........................................................................................................................24

24 U.S.C. § 416 ...........................................................................................................................24

28 U.S.C. § 1361 ....................................................................................................................*passim*

Fed. R. Civ. P. 56 ..................................................................................................................*passim*

WASH1\4976358.4

## INTRODUCTION

In May, 2005, Plaintiffs initiated this action to compel Defendants to satisfy their statutory duty to provide high-quality, on-site primary medical and dental care, as required by 24 U.S.C. § 413 ("Armed Forces Retirement Home Act" or "AFRHA"). In response to the Amended Complaint and Plaintiffs' efforts to finally move this case forward on the merits, Defendants now assert that relief is only available under the Administrative Procedure Act ("APA") and that Defendants are entitled to summary judgment because the purported "administrative record" they have assembled and filed demonstrates that their actions have not been arbitrary or capricious.

Defendants' motion for summary judgment ("Motion") should be denied. As an initial matter, Defendants incorrectly attempt to characterize this action as if it were a typical APA case seeking judicial review of an agency adjudication or rulemaking. It is not. This lawsuit is an action seeking a mandatory injunction to compel Defendants to comply with their statutory duty to provide the level and quality of health care mandated by 24 U.S.C. § 413. Plaintiffs seek relief under the APA because Defendants' failure to fulfill the statutory mandate is not in accordance with law. Alternatively, Plaintiffs seek relief under 28 U.S.C. § 1361, the Mandamus Act, and pursuant to an implied private right of action directly under 24 U.S.C. § 413. Plaintiffs are entitled to relief on each of these grounds, and Defendants' narrow analysis with respect to the APA is incorrect and misleading.

Defendants rely on what they characterize as an "administrative record." In fact, there is no administrative record in this case because there have been no administrative proceedings such as a rulemaking or agency adjudication. The assertion that there is a defined administrative record in this case is a sham and a thinly-veiled attempt to preclude Plaintiffs from obtaining any

discovery in this action and, more broadly, to evade judicial consideration in the first instance of the facts relating to this matter. Although Plaintiffs have been denied discovery in this case, the evidence available to date clearly demonstrates that Defendants have not complied with their statutory duty under 24 U.S.C. § 413. At a minimum, there is a genuine issue of material fact as to whether Defendants have complied with the mandatory requirements of the statute.

For the reasons, discussed below, the Motion should be denied.

## FACTUAL BACKGROUND

The following facts are properly considered in connection with Defendants' Motion:[1]

1.    The Home is a continuing care retirement community with approximately 1,300 residents. This total includes approximately 350 residents from the Armed Forces Retirement Home-Gulfport (Mississippi) who moved to the Home after the Gulfport facility was damaged by Hurricane Katrina in September, 2005. (FY 2005 Annual Performance and Accountability Report, hereinafter "2005 Annual Report," pp. 13-14).[2] The Home consists of an Independent Living facility, an Assisted Living facility, and a Long Term Care facility. The vast majority of residents live in the Independent Living facility. *Id.*

2.    The Home's operations are funded by a trust fund which receives its revenues from money collected from monthly active duty payroll deductions from enlisted military personnel (currently 50 cents per month), resident fees, fines and forfeitures from the armed forces, interest on the trust fund, and other sources. In 1995, Congress authorized an increase in

---

[1]    This Memorandum is accompanied by Plaintiffs' Statement of Material Facts for Which There Exists an Issue to be Litigated, along with supporting Declarations, which clearly demonstrate that there are genuine issues of material fact that preclude judgment as a matter of law.

[2]    The reports, affidavits and other supporting documents referenced herein are attached to Plaintiffs' Statement of Material Facts For Which There Exists an Issue to be Litigated and/or the Declaration of David H. Bamberger in Support of Plaintiffs' Request for Discovery Pursuant to Fed. R. Civ. P. 56(f), each of which are being filed contemporaneously with this Opposition.

the monthly active duty payroll deduction to $1 per month. Despite this authorization, Defendants have never implemented the increase. If the increase were implemented, it would generate an additional $7 million per year for the Home, or more than $91 million between 1995 and the present. (Chief Operating Officer Fact Sheet No. 1, hereinafter "Fact Sheet No. 1," ¶ 1) (Defendants' Statement of Fact, ¶ 2).

3.      In 2002, Timothy C. Cox became the Chief Operating Officer at the Home. In 2003, Mr. Cox launched a series of "major initiatives" at the Home. The first strategic goal of these initiatives was to "create financial net growth and stability for the trust fund." (Cox Decl., August 18, 2005, hereinafter "First Cox Decl.", ¶ 2); (2004 Annual Performance and Accountability Report, hereinafter "2004 Annual Report," p. 9).

4.      The initiatives at the Home included a "comprehensive health and wellness strategic initiative," the focus of which was "to make contracted physicians the primary providers of care, and thereby increase revenue." (2004 Annual Report, p. 37). The Home reported to Congress that "a major thrust was towards decreasing operating costs," and that staffing was reduced by 11%. (FY 2003 Report to Congress, p. 7, attached to Motion as AR 164).

5.      In the process of implementing the changes to the health care system in place at the Home, Defendants reduced both the availability of medical care and the quality of medical care for the residents. Among other things, the primary treatment room was closed, x-ray services were eliminated, the pharmacy was outsourced, and the availability of a physician 24 hours a day has been eliminated. (Rutherford Decl. ¶ 3; Murray Decl. ¶ 6; Tsukano Decl. ¶¶ 4-13); (*See* ¶¶ 9-21, below).

6.     In February, 2005, a representative of the Plaintiffs met with representatives of the Department of Defense to raise specific concerns about the reductions in available medical care at the Home.  On March 11, 2005, the Department of Defense provided a written response in which it made no commitment to make any changes in response to the residents' concerns.  (Rutherford Decl. ¶ 3).

7.     On May 24, 2005, Plaintiffs filed the present action.  Since that time, Defendants have issued a number of "fact sheets" in which they claim to have restored certain medical services – such as x-rays, availability of medications, and transportations services – that had been reduced or eliminated.  (Fact Sheet No. 8; Fact Sheet No. 10).  In reality, these allegedly restored services are either inadequate or have been denied to residents.  (*See* ¶¶ 16-20, below).

8.     In September, 2005, the resident population of the Home increased by more than 35% after residents from the sister facility in Gulfport, Mississippi relocated to the Home following Hurricane Katrina.  Despite this significant increase in residents, the reductions in staffing and availability of services remained in place.

**Unavailability of Physicians**

9.     Until November, 2003, the Home maintained a treatment room that was open for Independent Living residents 24 hours a day, 7 days a week, and staffed at all times by a physician and emergency medical personnel.  If a resident had an emergency medical condition, such as a fall in the night, this medical staff was available to come to the resident's room 24 hours a day.  The Home also had two ambulances that it used to transport residents, when needed, to other facilities.  (First Cox Decl. ¶ 6(c)); (Murray Decl. ¶ 5) (Rivkin Decl. ¶ 5).

10.     On November 10, 2003, the primary treatment room was closed.  (AFRH Bulletin, November 14, 2003).  Presently, a physician is only available to see residents between

7:30 a.m. until noon, and from 1:00 p.m. to 4:00 p.m., Monday through Friday. (Fact Sheet No. 8). If a resident requires medical assistance at other times, no physician is available to see the resident or even to speak with the resident. (Rivkin Decl., ¶ 6). While Defendants contend that "the Home has a physician on call who, along with the duty nurse, handles medical or dental issues that occur during non duty hours," this physician is not actually available to see residents or to speak with residents who require medical attention. (Cox Decl. May 16, 2008, hereinafter "Second Cox Decl." at ¶ 3). Residents who have asked to see a physician on weekends have been informed that there is no physician available and that they will need to wait until Monday. (Rutherford Decl. ¶ 9); (Murray Decl. ¶ 4); (Cox Decl. ¶ 6(c)).

11.   When a resident requires medical attention in the middle of the night, the procedure is for the resident to call the security supervisor (not a licensed health care provider) who will call the nurse on duty. Together, the security supervisor and duty nurse make a determination as to whether to call 911. If they call 911, an ambulance comes to take the resident to the emergency room at some other facility. The Home does not pay for the emergency transportation and residents have incurred hundreds of dollars in expenses for such transportation. (Rutherford Decl., ¶ 9).

**Unavailability of Dentists**

12.   Dental services at the Home have been reduced and are inadequate. The Home has just one dentist and one dental hygienist to care for more than 1,300 residents. (Rivkin Decl., ¶ 7). As a result of this inadequate staffing, residents are required to wait for months to obtain routine appointments. (Supplemental Affidavit of Homer Rutherford, ¶ 5). Previously, the Home provided services such as tooth extractions for residents. This service is no longer provided. Residents are required to go to private dentists to obtain such services, and pay out-of-

pocket for them.  Residents have incurred thousands of dollars in out-of-pocket expenses after they have been denied dental care and were forced to pay themselves for primary-care type services at a private dentist.  (First Cox Decl. ¶ 6(a)); (Renzi Decl. ¶ 4).

13.    The Home does not provide any dental services on nights or on weekends.  The Home does not have a dentist available on call at times other than the regular business hours of the Home.  The Home's walk in dental clinic, which is staffed by just a single dentist, is only open in the mornings on Monday, Tuesday, Thursday and Friday.  (Second Cox Decl. ¶ 3) ("the home does not currently keep a dentist on call after hours"); (Rivkin Decl. ¶ 6).

**Inadequate Pharmacy Services**

14.    Previously, the Home operated a 24 hour-a-day, on-site pharmacy at which residents could obtain prescription medications the same day that they were prescribed.  In 2003, the Home closed the pharmacy and replaced it with an outside source.  With the new provider, most prescriptions are filled at Walter Reed Army Medical Center.  The Home does not provide a same day prescription service for residents.  Unless the resident goes in person to pick up the prescription, it typically takes at least three days to receive them.  When a prescription cannot be filled at Walter Reed, residents are forced to obtain the prescriptions at local pharmacies. (Supplemental Rutherford Decl. ¶ 4).  The Home does not provide transportation to the local pharmacies.  (Rutherford Decl. ¶¶ 4, 5) (2004 Annual Report, p. 37).

15.    Because the Home does not actually deliver prescriptions to residents on the day they are prescribed, in 2004 a group of residents who own cars formed a volunteer carpool system to pick up prescriptions for residents who require their medication immediately.  When residents require emergency medications, a nurse from the community health center at the Home calls one of the members of the carpool group.  The driver will them pick up the patient (or the

patient's identification card) and drive to Walter Reed (in his personal car and at his personal expense) to obtain the medication for the resident. The nurses have typically called once or twice a week for this voluntary service. (Rutherford Decl. ¶¶ 6, 7).

16.    After this lawsuit was filed, Defendants have made various claims about the pharmaceutical services provided. On May 31, 2005, Mr. Cox issued a "fact sheet" stating that "independent residents can receive their medication the same day." Notwithstanding this claim, in practice, the Home does not provide residents with new prescriptions on the same day. (Rutherford Decl. ¶¶ 4-6); (Murray Decl. ¶ 4).

17.    The administration at the Home has long been aware that the prescription services at the Home were inadequate. In July, 2004, a physician at the Home reported in a morning meeting that "there is no provision to issue medications to outpatients on the weekend." This situation has not been corrected. On July 11, 2005 – a year later, and after this action was filed -- the Home further announced that "effective immediately, AFRH residents will now have medications available to them after hours" and that the medications will be available when the clinics are closed. This announcement vastly overstates the services actually provided. In fact, the Home only maintains a few over-the-counter medications for such purposes. Indeed, medical staff at the Home informed residents that the only medicine available at the Home is "stuff for headaches." (Morning Meeting Minutes, July 8, 2004); (Murray Decl. ¶ 4); (Rutherford Decl. ¶ 8); (Fact Sheet No. 10).

**X-Ray Services**

18.    In 2003, the Home eliminated the provision of x-ray services on-site for the residents. Defendants admit that the Home did not provide any x-ray services at the Home for two years. On May 31, 2005 – a week after Plaintiffs filed this lawsuit – Mr. Cox published a

"fact sheet" which stated that "since May 1, 2005, x-ray services are provided by a vendor who comes to the resident's bedside or room." Once again, the "fact sheet" does not describe the medical care actually available at the Home. In practice, the Home still refuses to provide x-ray services to residents and instructs them to go to Walter Reed to get x-rays.[3] (Fact Sheet No. 8); (First Cox Decl. ¶ 6(f)); (Hill Decl. ¶ 4).

**Transportation Services**

19.    Previously, the Home had an ambulance service for residents. This service has been discontinued. (Rivkin Decl. ¶ 5). Now, the only medical-related transportation that the Home provides is a shuttle service to Walter Reed, the VA Hospital, and Washington Hospital Center, with limited hours. In many cases, the limited transportation provided is not an option for residents who are feeble, ill, or confused. (Rutherford Decl. ¶¶ 4, 5); (Murray Decl. ¶ 5).

20.    On July 11, 2005 – approximately seven weeks after this action was filed – Mr. Cox announced that "[e]ffective immediately, after hours non-emergency transportation will be available" including "weekends and holidays." Since that time, however, the Home continues to inform residents that transportation is not available. On Sunday, August 14, 2005, a resident who believed he was suffering from a recurrence of a chronic condition requested transportation to Walter Reed for treatment. The nurse informed him that no transportation was available and that he would have to arrange for his own transportation or wait for the bus on Monday. (Murray Decl. ¶ 4); (Fact Sheet No. 10).

---

[3]    In addition to being in violation of the AFRHA on its face, the constant referrals to Walter Reed for services that should be provided at the Home are an extraordinary inconvenience to the residents. With the pending closure of Walter Reed and relocation of its facilities many miles away, continued reliance upon services at Walter Reed would cause even greater hardship on the residents of the Home.

**Quality of Care**

21.    In addition to these specific instances of reduction in the availability of services at the Home, their cumulative effect has been to compromise the overall quality of medical care and availability of medical services at the Home.  More and more services at the Home are being contracted out instead of handled by regular employees.  Due to cutbacks, fewer people have had to handle more tasks.  Physicians at Walter Reed, who have treated residents for various specialized conditions, have commented about how their overall condition indicated that they were not receiving adequate care.  Medical staff at the Home have resigned due to the changes at the Home.  Long term residents, as well as non-resident spouses who visit on a regular basis, have recognized a decline in the number of staff, the services provided, and the quality of care.  (Tsukano Decl. ¶¶ 4, 11); (Murray Decl. ¶ 6) (Fisher Decl. ¶ 7).

22.    In May, 2007, the United States Government Accountability Office ("GAO") issued a report regarding the regulatory oversight and monitoring of health care at the Home.  In this report, the GAO recognized, among other things, that recent reviews of the health care at the Home had resulted in findings that (i) the Home has an inadequate number of dental hygienists to meet its needs, (ii) residents are in settings not staffed to meet their needs, (iii) the medication delivery system is prone to errors, and (iv) there is inadequate pharmacy staff involvement.  (GAO Report 07-790R, p. 36).[4]

---

[4]    The GAO also noted that, when conducting its review, Mr. Cox declined to provide a copy of the Home's accreditation report with findings, including the Home's corrective actions, as requested.  (GAO Report 07-790R, p. 34).

## ARGUMENT

### I.    DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN UNDER THE STANDARD FOR SUMMARY JUDGMENT

#### A.    Applicable Legal Standard

Summary judgment is appropriate only where there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the non-moving party, the movant is entitled to prevail as a matter of law. *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To support a motion for summary judgment, the moving party bears the burden of showing the absence of a genuine issue as to any material fact, and, for these purposes, the material it lodges must be viewed in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Here, Plaintiffs have sought relief on three separate grounds, so Defendants bear the burden of showing that they are entitled to judgment as a matter of law on each separate ground.

#### B.    Defendants Have Failed To Meet Their Burden With Respect To The Administrative Procedure Act.

Defendants improperly attempt to pigeonhole this dispute into the typical procedural posture of a case governed by the arbitrary and capricious standard of the Administrative Procedure Act. Defendants' disingenuous characterization of the case is belied, however, by the fact that there has been no rulemaking, adjudication, or any administrative proceeding whatsoever in this case for which judicial review is being sought. APA cases often involve proceedings by an agency that are subject to judicial review under that statute, such as, for example, an adjudication by the Federal Trade Commission or a decision by the Environmental Protection Agency ("EPA") to grant a permit or license. In the case of rulemaking proceedings, there are provisions for notice and comment; and, in the case of adjudications, there are formal proceedings before an Administrative Law Judge ("ALJ"), including sworn testimony and the

receipt of written evidence.  In such cases, the agency's enabling statute typically provides for judicial review of the resulting agency decision, based upon the record that was developed by the agency during the course of the proceedings.  Typically, the statute in question provides that such review shall be had in the United States Court of Appeals, and Rules 15 through 20 of the Federal Rules of Appellate Procedure provide the framework for the procedures to be applied in such cases, including the content of the administrative record.  This case, in contrast, does not seek review of an agency's handling of such proceedings.  Rather, it is based on Defendants' failure to fulfill a mandatory statutory duty to the Home's residents under 24 U.S.C. § 413.  Moreover, Defendants' purported "administrative record" is nothing more than a piecing together of various materials that are not a "record" of any proceeding, just a selection of various papers with a ribbon on it.

### 1.    This Case Does Not Involve Judicial Review of Agency Proceedings.

As noted above, lawsuits challenging agency action generally follow an administrative proceeding, such as an agency adjudication.  In those contexts, the administrative law judge or panel has already made findings of fact, based upon an evidentiary record developed according to established rules, and those findings are generally given deference upon appeal.  The cases cited by Defendants are all easily distinguishable, because they arise in the context of challenges to such agency action in the form of a decision by an administrative law judge or the outcome or procedures relating to a rulemaking.  *See Doyle v. England*, 193 F. Supp. 202 (D.D.C. 2002) (involving review of Navy's decision rejecting recommendation made by three-member panel of Board for Correction of Naval Records to correct Plaintiff's naval records); *Fund for Animals v. Babbitt*, 903 F. Supp. 96 (D.D.C. 1995) (challenging adequacy of grizzly bear recovery plan developed by Fish and Wildlife Service pursuant to Endangered Species Act and disputing legality of denial of petition requesting designation of critical habitat for grizzly bear); *Envtl. Def.*

*Fund, Inc. v. Costle*, 657 F.2d 275 (D.C. Cir. 1981) (involving EPA's decision to improve water quality standards for salinity and various related inactions by EPA, Department of the Interior, and Bureau of Reclamation with regard to Clean Water Act, Colorado River Basin Salinity Control Act, and National Environmental Policy Act); *Richards v. INS*, 554 F.2d 1173 (D.C. Cir. 1977) (review of INS's denial of application to change status from visitor to student); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) (challenging Secretary of Transportation's authorization of interstate highway through public park under Department of Transportation Act and Federal Aid Highway Act). In such cases, the applicable facts are already established through an orderly agency determination, proceeding, or review process, governed by established procedures, which is then subject to review by the relevant tribunal.

This case does not fit into such a framework. Here, there have been no prior determinations or findings of fact, and no proposed rules have been issued or final rules promulgated under the statute. Indeed, there have been no administrative proceedings whatsoever. Rather, there has been a unilateral determination by the COO to eliminate longstanding medical services at the Home, the result of which has been to deprive the residents at the Home of the services to which they are entitled by law.

## 2.    Defendants' Purported "Administrative Record" Is A Sham.

In an adjudication, the administrative record consists of "the order initiating the proceeding, the pleadings of the parties, any agency orders that address substantive or procedural issues raised by the parties, the transcript of the hearing, the evidentiary exhibits, the initial decision of the ALJ and, in most cases, the final decision of the agency, along with any subsequent agency decisions denying rehearing or reconsideration of the agency decision." Pierce, Richard J., Administrative Law Treatise, 4th ed., § 11.6 (2002). When the proceeding involves notice and comment rulemaking, the record consists of the notice of proposed

rulemaking ("NOPR"), studies or reports incorporated by reference in the NOPR, comments received in response to the NOPR, and the final rule incorporating the statement of the basis and purpose of the rule. *Id; see also Rodway v. U.S. Dep't of Agric.*, 514 F.2d 809, 817 (D.C. Cir. 1975) ("The whole record in an informal rule-making case is comprised of comments received, hearings held, if any, and the basis and purpose statement"). The purported "administrative record" submitted by Defendants, however, fails to meet either of these definitions because no administrative proceeding—adjudication, rulemaking, or otherwise—has occurred in this case. Defendants' cannot convert the collection of random materials they have assembled into an "administrative record" simply by naming it as such.[5]

### 3. Defendants Have Failed To Establish That Their Actions Are "In Accordance With Law."

The APA provides that a court "shall hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, ***or otherwise not in accordance with law***" (emphasis added). 5 U.S.C. § 706(2)(A). Defendants' arguments focus exclusively on the "arbitrary and capricious" clause within this section. In limiting their arguments in this manner, Defendants have improperly ignored the alternative provision that permits a Court to grant relief when agency action—here inaction in failing to provide medical care at the Home—is "not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A). Agency action that fails to satisfy the requirements of a statute or regulation "cannot be considered to be in accord with law" and must be set aside. *See In Robert E. Derecktor of Rhode Island, Inc. v. Goldschmidt,*

---

[5] The cases cited for Defendants' claim that "discovery is not generally necessary and should be prohibited" have no bearing on this dispute because these cases, unlike the present case, involve judicial review of administrative proceedings. (Defs.' Mot. at 14). *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) (involving review of final order by Nuclear Regulatory Commission denying citizen petition for enforcement action); *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1 (D.C. Cir. 1998) (involving judicial review of suspension order by General Services Administration based on regulations providing authority to suspend contractor indicted for defrauding the government).

506 F. Supp. 1059, 1063 (D.R.I. 1980) (declaring unlawful the award of a contract in violation of mandatory requirements of governing regulations). Defendants' effort to circumvent this plain requirement of the APA is transparent and fatal to their Motion.

When an agency does not comply with the provisions of a statute or regulation, courts have readily declared the agency action to be unlawful under Section 706(2)(A). *See Ethyl Corp. v. EPA*, 306 F.3d 1144 (D.C. Cir. 2002) (agency action was "not in accordance with law" when agency issued regulation that did not satisfy mandatory requirements contained in statute); *In Home Health, Inc. v. Shalala*, 188 F.3d 1043 (8th Cir. 1999) (setting aside Secretary's decision to limit reimbursement to provider of physical therapy services as not in accordance with law when decision did not comply with statute); *ACEMLA v. Copyright Royalty Tribunal*, 763 F.2d 101 (2nd Cir. 1985) (failure of Copyright Royalty Tribunal to comply with statutory command to require that claimants prove entitlement to royalties prior to distribution was "not in accordance with law"); *Citizens for a Better Env't v. EPA*, 596 F.2d 720 (7th Cir. 1979) (agency action that does not satisfy statutory duty must be overturned).

In this case, when all factual inferences are drawn in Plaintiffs' favor, there is at least a factual dispute as to whether Defendants have acted in accordance with law. For example, Defendants *admit* that they have failed to comply with the mandatory requirement that a dentist be available on an on call basis during nights and weekends as required by 24 U.S.C. § 413(c)(1)(A) and (B). Similarly, the Home does not make an on call physician available after hours, requires residents to wait up to 72 hours to receive new prescriptions, and does not provide sufficient access to medications on weekends and holidays. Even without the benefit of discovery, it is more than evident that there are genuine issues of material fact as to whether

Defendants are providing high quality, on-site primary medical care to the residents at the Home, in accordance with law, as required by 24 U.S.C. § 413.

> **a.    Defendants Must Comply with the Plain Language of the Statute in Order for Their Actions to be in Accordance with Law.**

Defendants also contend that in construing statutes, the Court should not substitute its judgment for that of the agency and the agency's administrative decisions should be given deference. (Defs.' Mot. at 15-16, 21). However, when it comes to questions of the interpretation of a statute, "[t]he plain meaning of a statute controls, if there is one, regardless of an agency's interpretation." *In Home Health, Inc.*, 188 F.3d at 1046 (citing *Chevron*, 467 U.S. 837, 842-43 (1984)). Agency action that is based on an erroneous interpretation or misapplication of the relevant statutory provisions is not in accordance with law. *See Williams v. Wash. Metro. Area Transit Comm'n*, 415 F.2d 922, 939 n. 86 (D.C. Cir. 1968) (agency action must be set aside as unlawful when the absence of findings reflects arbitrariness or misapplication of statutory standards).

The statute in this case, 24 U.S.C. § 413, contains the unequivocal mandate that Defendants provide on-site, high-quality health care, and, on appeal, the D.C. Circuit found that this statutory language was clear enough to be enforceable. *See Cody v. Cox*, 509 F.3d 606, 610-11 (D.C. Cir. 2007). While the statute also provides that Defendants shall do so in a cost-effective manner, it does not permit Defendants to elevate their cost-cutting concerns above the requirement to provide high-quality, on-site medical care. Thus, reductions in services such as limiting the availability of physicians, closing the pharmacy, eliminating dental services, ignoring the statutory requirement to provide an on call dentist, and other such reductions in availability were based upon a flawed interpretation of relevant statutory provisions and were

"not in accordance with law." *See also Sarasota Mem'l Hosp. v. Shalala*, 60 F.3d 1507, 1511-13

(11th Cir. 1995) (finding Secretary's decision unreasonable and inconsistent with statutory

mandate because "courts are not bound by an agency's interpretation" and "a court must not

abdicate its responsibility to review an agency's construction that is alleged to be inconsistent

with the statutory mandate") (internal citation omitted); *Mt. Emmons Mining Co. v. Babbitt*, 117

F.3d 1167, 1170 (10th Cir. 1997) (reviewing court need not accept agency interpretations which

frustrate the policy that Congress sought to implement).

> ### 4.    Summary Judgment Would Not Be Warranted Even If An Arbitrary And Capricious Standard Were Applicable.

Even if the Court were to apply an arbitrary and capricious standard in this case—which

it should not—Defendants cannot show that there is no genuine issue of material fact.  To

survive review under this standard, an agency must "examine the relevant data and articulate a

satisfactory explanation for its action including a 'rational connection between the facts found

and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut.*

*Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), quoting *Burlington Truck Lines, Inc. v. United States*, 371

U.S. 156, 168 (1962).  Normally, an agency rule would be arbitrary and capricious if the agency

has relied upon factors which Congress has not intended it to consider, entirely failed to consider

an important aspect of the problem, offered an explanation for its decision that runs counter to

the evidence before the agency, or is so implausible that it could not be ascribed to a difference

in view or the product of agency expertise.  *Id.*

Numerous examples of Mr. Cox's judgment qualify as arbitrary and capricious under

these standards.  To cite but one example, Mr. Cox states that the Home does not keep a dentist

on call after hours because the on call physician and duty nurse provide "the exact same function

as an on-call dentist" and having both would be "redundant."  (Second Cox Decl. at ¶ 3), even

though the statute specifically calls for medical *and* dental care, medical *and* dental services, and

for physicians *and* dentists to be available on call after hours (24 U.S.C. § 413(b) and (c)).  By

Mr. Cox's reasoning, the statute itself is redundant and nonsensical.  Defendants state that "the

choice of one particular action over another is not arbitrary, capricious or an abuse of discretion

'simply because one may happen to think it ill-considered, or to represent the less appealing

alternative solution available.'"  (Defs.' Mot. at 13). This argument misses the point.  Plaintiffs

do not contend that Defendants have no discretion in satisfying their statutory mandate.  The

discretionary component of the agency action, however, is not *whether* to comply with the

statute, but *how* to meet the statutory mandate.  Plaintiffs are not challenging Defendants'

deliberative process or their delivery model as such.  Decisions regarding how to provide on-site,

high-quality health care—such as whether to use contract physicians rather than employed

physicians, an on-site contract prescription drug service rather than operating a pharmacy, or a

contract vendor to provide x-rays rather than employed medical staff to provide x-rays—are

within Defendants' discretion *provided* that actually Defendants provide the high-quality, on-site

care mandated by statute.  Plaintiffs challenge how Defendants have conducted operations at the

Home to the extent that Defendants' action and inaction has resulted in a failure to meet their

statutory duty, and to that extent, Defendants have abused their discretion.[6]

---

[6]    Nor is the rational basis test, advanced by Defendants, an appropriate measure in this case, given the clear statutory mandate.  Under this test, the court must make a substantial inquiry into the facts to ensure that the agency demonstrates a rational connection between the facts found and the choice made. *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404-05 (D.D.C. 1995), citing *Motor Vehicle Mfrs. Ass'n*, 462 U.S. at 43.  Here, there have been no such findings, so there is no record upon which to evaluate whether there was a rational basis for the agency action.  Even more fundamentally, however, Defendants' argument is plainly flawed insofar as they contend that the decisions regarding the provision of health care at the Home are completely within the Chief Operating Officer's discretion, regardless of the statutory mandate.  Taken to its logical conclusion, under this analysis, the COO could decide that the Home would not provide any medical services to its residents, but that, instead, the residents could go to the Veterans' Administration Hospital, Walter Reed, or another provider for all of their medical needs.  In light of the claimed diminishing trust fund, this hypothetical decision might be characterized by the Defendants as "rational."  The obvious problem, however, is that this "rational" approach would be in (footnote continued)

**C.      Defendants Have Failed To Meet Their Burden With Respect To The Mandamus Act**

Plaintiffs are entitled to bring a direct action for injunctive relief under 28 U.S.C. § 1361, (Mandamus Act), and courts have granted relief under the Mandamus Act in similar circumstances.  Under the Mandamus Act, district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff." 28 U.S.C. § 1361.  If a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed on him in his official capacity, no separate waiver of sovereign immunity is needed.[7]  *Wash. Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996); *see also Am. Cetacean Soc'y v. Baldrige*, 604 F. Supp. 1398 (D.C. Cir. 1985) (mandamus appropriate where wildlife conservation groups brought action for declaratory and injunctive relief against Secretary of Commerce for failure to comply with nondiscretionary statutory duty regarding international whaling quotas) *rev'd other grounds by Japan Whaling Assoc. v. American Cetacean Soc'y*, 478 U.S. 221 (1986); *Anselmo v. King*, 902 F. Supp. 273 (D.D.C. 1995) (stating that "[s]overeign

---

clear violation of the statutory mandate to provide high-quality, on-site health care.  Given the plain language of 24 U.S.C. § 413, the "rationality" of Defendants' conduct provides no defense to Plaintiffs' claim that such conduct fails to meet the statutory standard.

[7] The waiver of sovereign immunity provided in the APA applies to any suit whether under the APA or not:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

U.S.C. § 702.  *Chamber of Commerce v. Reich*,  74 F.3d 1322, 1328 (D.C. Cir. 1996); *see also Hubbard v. EPA,* 949 F.2d 453, 470 (D.C. Cir. 1991) (legislative history of § 702 makes clear that it withdraws the defense of sovereign immunity in an action seeking relief other than money damages, such as an injunction, declaratory relief, or writ of mandamus).

immunity is no defense to an action for mandamus" in case where complaint seeking only declaratory relief and mandamus was not an action for damages, so sovereign immunity of the United States was not implicated); *McNutt v. Hills*, 426 F. Supp. 990, 999 (D.D.C. 1977) (sovereign immunity has never been considered a bar to mandamus actions seeking to compel public officials to adhere to the duties imposed upon them in their official capacities) (internal citations omitted).[8]

Relief under the Mandamus Act is available if the plaintiff has clear right to relief, the defendant has clear duty to act, and there is no other adequate remedy available.[9] *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996). An action under section 1361 is appropriate "when the person seeking such relief can show a duty owed to him by the government official…that is ministerial, clearly defined and peremptory." *Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564, 566 (10th Cir. 1981) (internal citation omitted). Here, the Secretary has a statutory duty that is ministerial not discretionary. "Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary [i.e. ministerial] if it involves enforcement or administration of a mandatory duty at the operational level." *Beatty v. Washington Metro. Area Transit Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988) *quoting Jackson v. Kelly*, 557 F.2d 735, 737-38 (10th Cir. 1977) (reversing district

---

[8]    Defendants argue that "[n]either the general federal question statute nor the *mandamus* statute by itself waives sovereign immunity," citing *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996). Memorandum, p. 13, FN 4. This argument misses the point. As explicitly recognized by the D.C. Circuit in *Swan*, the expansive "*Larson-Dugan* exception" holds that sovereign immunity does not apply as a bar to certain suits, such as mandamus actions, alleging that an officer's actions were unconstitutional or beyond his or her statutory authority. *See Swan*, 100 F.3d at 978; *Chamber of Commerce*, 74 F.3d at 1329. As this broad exception applies to mandamus actions, there is no need for a general waiver of sovereign immunity.

[9]    The AFRHA does not provide for any administrative remedy such as a petition to an agency board. *cf. Anselmo v. King*, 902 F. Supp. 273, 278 (D.D.C. 1995) (requirement of absence of other adequate remedy satisfied where agency board had refused class relief).

court summary judgment for government, and looking at definition of "discretionary" in order to determine whether military physician was immune from liability in malpractice action).   In judging a duty as ministerial rather than discretionary, the reviewing court may look to see whether "the statute, once interpreted, creates a peremptory obligation for the officer to act." *13th Regional Corp. v. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980).

This is not a case in which Plaintiffs ask the court to judge how the agency decided to carry out discretionary functions, but rather to find whether a mandatory duty has been carried out in satisfaction of the statute.[10]  Similar to the duty in *Estate of Smith v. Heckler*, 747 F.2d 583 (10th Cir. 1984), the Secretary is mandated by statute to provide high-quality patient care.  *See id*. at 585.  In that case, the district court found the Secretary had failed to follow her statutory duty to be adequately informed, and ruled relief was appropriate under Section 1361.  In so ruling, the court ruled, "[i]f, after studying the statute and its legislative history, the court determines that the defendant official has failed to discharge a duty which Congress intended him to perform, *the court should compel performance, thus effectuating the congressional purpose.*"  *Smith,* 747 F.2d at 591, *quoting Carpet, Linoleum and Resilient Tile Layers*, 656 F.2d at 566 (emphasis added).  As in *Smith*, Plaintiffs seek relief from the court in order to compel the agency to do what it is statutorily required to do.

Plaintiffs are the intended beneficiaries of an unmet statutory duty.  The Armed Forces Retirement Home Act of 1991 merged the United States Soldiers' and Airmen's Home, and the U.S. Naval Home.  The AFRH was specially created to provide services to "former enlisted

---

[10]    The distinction between review of administrative procedure and required duty was made clear in *Maguire v. Heckler*, 1983 U.S. Dist. LEXIS 16882 (S.D.N.Y. 1983), where the plaintiff was denied social security benefits through a series of procedural mistakes.  Receiving the case before agency appeals were exhausted, the district court ruled that the plaintiff's procedural allegations must be dismissed.  However, the court found jurisdiction was proper under section 1361 to review the Secretary's decision to deny plaintiff further review.  *Maguire*, 1983 U.S. Dist. LEXIS at *12.

soldiers, sailors, airmen and Marines…whose dedication and sacrifices in military service have helped to preserve our nation and way of life." *See* Hearings on National Defense Authorization Act FY 1999, H.R. 1401. In so doing, Section 413(b) compels the Secretary to provide high-quality, on-site health care to the particular veterans eligible to benefit from the home.[11] The statute is explicit in defining the beneficiaries and increasingly specific with regard to the kind of care which shall be provided to them at the Home. *See* 24 U.S.C. § 413(b) (inserting new language in January 2008 that "services provided residents of the Retirement Home shall include appropriate nonacute medical and dental services, pharmaceutical services, and transportation of residents"). Here, the duty to provide these services is not being met, and Plaintiffs have brought action to compel Defendants to satisfy their clear statutory obligation under the statute is to provide high quality, on-site health care. Plaintiffs are entitled to seek relief under the

---

[11]      (1) Persons who—
               (A)      are 60 years of age or over; and
               (B)      were discharged or released from service in the Armed Forces under honorable conditions after 20 or more years of active service.
          (2) Persons who are determined under rules prescribed by the Chief Operating Officer to be incapable of earning a livelihood because of a service-connected disability incurred in the line of duty in the Armed Forces.
          (3) Persons who—
               (A) served in a war theater during a time of war declared by Congress or were eligible for hostile fire special pay under section 310 of title 37;
               (B) were discharged or released from service in the Armed Forces under honorable conditions; and
               (C) are determined under rules prescribed by the Chief Operating Officer to be incapable of earning a livelihood because of injuries, disease, or disability.
          (4) Persons who—
               (A) served in a women's component of the Armed Forces before June 12, 1948; and
               (B) are determined under rules prescribed by the Chief Operating Officer to be eligible for admission because of compelling personal circumstance. 24 U.S.C. § 412(a).

Mandamus Act, and Defendants are simply wrong to claim that "the APA is the only possible basis for Plaintiffs to challenge Defendants' actions" (Defs.' Mot. at 13). [12]

**D.    Defendants Have Failed To Meet Their Burden With Respect To A Private Right Of Action Under 24 U.S.C. § 413**

Plaintiffs also have an implied private right of action under 24 U.S.C. § 413.   The violation of a federal statute supports a private cause of action when it can be inferred that Congress intended to create a private right of action.   To determine whether such a right exists,

> the Supreme Court articulated four factors for the courts to weigh in discerning congressional intent to provide an implied private right of action: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted; (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate for the court to infer such a cause of action based solely on federal law.

*Tax Analysts v. IRS*, 214 F.3d 179, 185-86 (D.C. Cir. 2000) (*citing Cort v. Ash*, 422 U.S. 66 (1975)).   In recent years, the Supreme Court has refined the factors, indicating that "statutory intent is determinative, and "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."   *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).   The "focal point" for this analysis is Congress' intent in enacting the statute,

> Our focus on congressional intent does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action.   The implied cause of action doctrine would be a virtual dead letter were it limited to correcting drafting errors when Congress simply

---

[12]    Defendants contend that mandamus is an "extraordinary" remedy for "exceptional circumstances" (Defs.' Mot. at 13).   Whether or not the circumstances of this case qualify as "exceptional" that require an "extraordinary" remedy is at the very least a factual question to be determined after discovery and one that precludes summary judgment at this premature stage in the litigation.

> forgot to codify its evident intention to provide a cause of action. Rather, as an *implied* cause of action doctrine suggests, the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question. We therefore have recognized that Congress' intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment.

*Thompson v. Thompson*, 484 U.S. 174, 179 (1988) (emphasis in original) (quotations and citations omitted). Congressional intent to create a private cause of action, therefore, "can be inferred from the statute, the statutory structure, or some other source...." *Id.*

While the Supreme Court's emphasis on congressional intent seems to have condensed the second and third *Cort* factors, the others survive, and are easily satisfied in this case. Plaintiffs, as residents of the Home, are quite clearly members of the class for whose benefit 24 U.S.C. § 413 was enacted. The statute itself speaks in unambiguous terms, explaining that "a resident of the Home shall receive the services" that Defendants have failed to provide in this case, and plainly indicates that the purpose of the establishment of the Home "is to provide . . . residences and related services for certain retired and former members of the Armed Forces." 24 U.S.C. §§ 413 & 411. Moreover, 24 U.S.C. § 412 specifically details what persons are eligible to be residents of the Home and what persons are ineligible. Each Plaintiff was required to meet these eligibility provisions before being admitted into the Home. Furthermore, because of the eligibility provisions required by statute, any private cause of action inferred here is available only to a limited number of potential litigants; only residents of the Home can bring a claim if the medical services they are entitled to by statute are not provided.[13]

---

[13]    It is equally clear that a private cause of action under 24 U.S.C. § 413 is not one traditionally relegated to state law. The Home "is an independent establishment in the executive branch" that receives support from the Secretary of Defense and the departments of the military on a non-reimbursable basis. 24 U.S.C. § 411(a). "The Chief Operating Officer shall serve at the pleasure of the Secretary of Defense" and "shall be responsible to the Secretary of Defense for the overall direction, operation, and management (footnote continued)

Finally, in order to determine whether a private cause of action exists, we must "begin . . . our search for Congress's intent with the text and structure of [the statute at issue]. *Sandoval*, 532 U.S. at 288. As discussed above, Section 413 unambiguously states as follows:

> The Retirement Home *shall* provide for the overall health care needs of residents in a high quality and cost-effective manner, including on site primary care, medical care, and a continuum of long-term care services. The services provided residents of the Retirement Home *shall* include appropriate nonacute medical and dental services, pharmaceutical services, and transportation of residents, which *shall* be provided at no cost to residents. Secondary and tertiary hospital care for residents that is not available at a facility of the Retirement Home *shall*, to the extent available, be obtained. . . .

24 U.S.C. § 413(b) (emphasis added). It is evident by the text of the statute, and, indeed Defendants have conceded, that the Home is required to provide high-quality, on-site medical care. There is, in the text of the statute itself, a clear congressional expectation that the health care residents *shall* receive will be both high quality and cost-effective. Placed side by side and with equal weight in the statute, one of those requirements cannot overshadow the other in order to justify cutting medical care.[14]

---

of the Retirement Home and shall report to the Secretary on those matters." 24 U.S.C. § 415. Thus, the statute makes clear that the Home and matters akin to it are explicitly under the guise of the executive branch, the Department of Defense, and military departments, which are traditionally relegated to federal law, not state law.

[14]    Dr. Dennis W. Jahnigen, Chairman of the Armed Force Retirement Home Board, testified before the Subcommittee on Labor, Health and Human Services, Education and Related Agencies of the House Appropriations Committee on May 6, 1997. The Board chaired by Dr. Jahnigen was created by Congress "to serve in an advisory capacity to the Director of the facility and to the Chief Operating Officer," in order to ensure that the Home met its mission. 24 U.S.C. § 416(b). As the Chairman of that Board, Dr. Jahnigen was appointed by and served at the pleasure of the Secretary of Defense. 24 U.S.C. § 416(c)(2). Speaking five years after the Armed Forces Retirement Home Act of 1991 was passed, he reiterated in his very opening words, Congress's intention that residents of the Home had a right to high quality care, saying:

> The mission of the Armed Forces Retirement Home (AFRH) remains
> unchanged – to provide a continuum of care and service in a retirement

(footnote continued)

Congress plainly intended to provide former and retired members of the Armed Forces who satisfy the requirements for admission to the Home with the right to on-site, high quality medical services. "Rights creating language can be characterized as language that explicitly confers a right directly on a class of persons that include the plaintiff, [including] language…that identify[ies] the class for whose especial benefit the statute was enacted." *Rolland v. Romney*, 318 F.3d 42, 53 (1st Cir. 2003) (class of residents of nursing homes had private cause of action under Nursing Home Reform Amendments to Medicaid law). The AFRHA also provides no administrative remedy or other enforcement mechanism. In some cases in which Congress has otherwise enacted a comprehensive legislative scheme, including an integrated system of procedures for enforcement, a presumption is created that Congress deliberately did not create a private cause of action. *See Tax Analysts*, 214 F.3d at 186; *Gov't of Guam v. Amer. Pres. Lines*, 28 F.3d 142, 145-46 (D.C. Cir. 1994) (implication of a private right undercut by existence of administrative remedy). Here, no such complex enforcement scheme exists. As such, failure to infer a private cause of action would render the statute toothless, leaving the residents with no recourse to ensure that the Home "shall" provide them the high-quality, on-site medical and dental services.

For all of these reasons, Defendants' Motion should be denied.

---

> community for retired and former members of the Armed Forces, enabling them to live their remaining years among friends in an atmosphere of personal dignity; to provide the highest quality of residential, social, and health services to residents, emphasizing a holistic approach to each individual which stresses the excellence of these services in meeting the needs and expectations of the current and future residents . . . .

Testimony of Dr. Dennis W. Jahnigen, Chairman Armed Forces Retirement Home Board before the Subcommittee on Labor, Health and Human Services, Education and Related Services of the House Appropriations Committee on June 11, 1997. Indeed, Dr. Jahnigen's testimony focused on the Home's goal "to constantly provide quality health care and services to its residents." *Id.*

## II.    PLAINTIFFS ARE ENTITLED TO DISCOVERY UNDER RULE 56(F).

As explained above, genuine issues of material fact preclude summary judgment in this case, and Defendants are not entitled to judgment as a matter of law.  The record at this early stage in the litigation, however, is limited.   Defendants have sought summary judgment prior to even responding to requests for production of documents propounded by Plaintiffs on October 28, 2005—nearly three years ago.  Discovery responses have not been exchanged, and not a single deposition has been taken in this case.  Plaintiffs respectfully request that, if the request for summary judgment is not denied at this juncture, as it should be, Plaintiffs are afforded an opportunity to conduct discovery as to the material facts in accordance with Rule 56(f):

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f).  "The purpose of 56(f) is to provide non-movants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).  *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).  Where a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely.  *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995).

Plaintiffs have reason to believe that there is a substantial body of evidence that is highly relevant to the quality of health care provided to the residents at the Home.  Plaintiffs have received informal, unsolicited information from medical personnel with actual knowledge of the

medical care provided to residents at the Home.  Among other things, Plaintiffs have been informed of the following:

- Residents with medical needs are not receiving adequate medical care and are suffering as a result.

- In 2004, a resident lost both legs because of "bad care" by the medical staff at the Home.  Another resident, who had pressure ulcers on both heels, had his wounds wrapped with unsterile dressings because the Home had run out of supplies for his ulcer care.  The Home has also run out of catheters.

- A resident from Independent Living died with severe clinical signs of malnutrition and dehydration.  We have been informed that a full investigation was ordered.

- A resident at the Long Term Care facility in the LaGarde Building at the Home, who cannot feed himself, was admitted to Walter Reed with clinical proof of severe malnutrition and dehydration.  He also had a broken arm that had been untreated for months.  A social worker reported this situation to adult protective services.

- There have been numerous reports that a physician at the Home has written prescriptions for the wrong medication, thereby placing residents in potential harm.

- During the course of conducting a statutorily mandated study of the Home in 2007, the Government Accountability Office interviewed a number of health care providers at the Home.  As reported by the Comptroller General, the health care providers "expressed serious concerns about the quality of health care at the Home" and noted that, in the past, the Home had retaliated against those who questioned the quality of care.  The Comptroller General also reported (i) that residents of the Home had been checked into Walter Reed in condition that reflected inadequate care at the Home, including at least one resident with maggots in a wound, (ii) the failure of the Home to provide appropriate care for a resident who had received a kidney transplant, resulting in hospitalization, and (iii) observance of blood-, urine- and feces-splattered rooms among residents in Independent Living, suggesting that they were inappropriate placed in the wrong section of the Home.  A copy of the Comptroller General's March, 2007 letter to the Secretary of Defense is attached as Exhibit 6 to the Rule 56(f) Declaration.

- Physicians from Walter Reed who have treated residents from the Home have been so concerned that they have reported specific cases to the Long Term Care ombudsman at the Home.

- Long time medical staff have resigned because of the changes implemented in the medical care for residents.

These reports suggest a substantial body of additional evidence that could be gleaned through discovery that would raise additional genuine issues of material fact as to the quality of health care provided to residents at the Home.

Despite receiving these reports, Plaintiffs have not had the opportunity to pursue discovery as to these issues. Indeed, when Plaintiffs sought to conduct informal discovery through interviewing a former nurse from the Home to discover facts that are material to this action, the Department of the Army blocked these efforts. *See* December 10, 2004 Letter from Department of the Army, Office of the Center Judge Advocate (attached to the Rule 56(f) Declaration). Thus, Plaintiffs have been denied the opportunity to discover facts relevant to this action.

If Plaintiffs are afforded an opportunity to conduct discovery pursuant to Rule 56(f), they would anticipate propagating further written discovery regarding, among other things, the specific changes in the level of health care that is available to residents at the Home, the policies regarding health care at the Home, information about what health care is actually provided, and reports and investigations as to the health care provided at the Home. Plaintiffs also will take deposition testimony from, among others, members of management and policy makers at the Home, health care providers at the Home (or formerly at the Home), and other medical personnel who have knowledge of the health care provided at the Home (such as personnel at Walter Reed).

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.


Respectfully submitted,


_____/s/_____
David H. Bamberger (D.C. Bar No. 362285)
Syma Mirza (D.C. Bar No. 978858)
DLA PIPER US LLP
500 8th Street, N.W.
Washington, D.C.  20004
Tel:    (202) 799-4500
Fax:    (202) 799-5500

and

J. David Folds (D.C. Bar No. 449791)
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
Tel:    (202) 496-7521

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June, 2008, a true and correct copy of the foregoing Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and accompanying Statement of Material Facts for Which There Exists an Issue to Be Litigated was served via electronic filing upon the following:

Brian C. Baldrate
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C.  20530


_____/s/_____
David H. Bamberger